**ALLIS–CHALMERS MFG. CO. v. CURTIS ELECTRICAL CO. et al.**

No. 10149.

Court of Civil Appeals of Texas. Austin.

June 17, 1953.

Rehearing Denied July 8, 1953.

Dan Moody, Austin, for appellant.

James R. Meyers, and Coleman Gay, Austin, for appellee.

HUGHES, Justice.

This suit was filed February 11, 1941, by appellant, Allis-Chalmers Manufacturing Company, against the Curtis Electrical Company and appellees, Charles E. Curtis and the American Indemnity Company.

The suit against the Electrical Company was for payment of the balance due, $5,-886.53, on certain electrical equipment furnished such company by appellant for use in the construction of certain buildings by the Agricultural and Mechanical College of Texas on its campus at College Station, Texas.

Appellant sought to establish the joint and several liability of appellees for the account sued on by reason of a performance bond executed by the surety company and, as to Curtis, by reason of his acts, agreements and representations all as hereinafter fully set forth.

Judgment against the electrical company was rendered for $9,318.43 with 6% interest from its date, from which no appeal was taken, and a take nothing judgment was rendered in favor of appellees, from which portion of the judgment appellant appeals.

Appellant's first point relates to the failure of the trial court to render judgment on the performance bond executed by the American Indemnity Company.

Trial was before the court on stipulations and documentary evidence which, as they pertain to point one are: Curtis Electrical Company, through its president, appellee Charles E. Curtis, entered into a contract with the Agricultural and Mechanical College of Texas to furnish and install certain electrical wiring and equipment in buildings which were to be constructed on the campus of A & M College and to pay suppliers for equipment and material so used. ·

In connection with this contract Curtis Electrical Company, as principal, with appellee, American Indemnity Company, as surety, furnished a bond binding themselves to the Arigcultural and Mechanical College of Texas "as well as to all persons, firms and corporations who may furnish material for, or perform labor on the work, building or improvement contemplated in a certain contract hereinafter mentioned." The contract between Curtis Electrical Company and the Agricultural and Mechanical College of Texas was referred to and identified in the bond.

The bond further provided that it was "made for the use and benefit of all persons, firms and corporations who may furnish any material or perform any labor for or on account of said work, building or improvement, and they and each of them are hereby made obligees hereunder, the same as though their own proper names were written herein as such, and they and each of them may sue hereon, and no change of or deviation from, the time,

manner or amount of payments to the contractor * * * shall affect or in any manner release the liability of the surety on this bond, * * *"

The electrical equipment which Curtis Electrical Company had contracted to supply and install was to be installed in the buildings to be constructed under a contract between W. S. Bellows Construction Company and the Agricultural and Mechanical College of Texas.

The construction of these buildings was financed by revenue bonds issued and sold pursuant to the provisions of Chapter 5, Acts of the Second Called Session of the Forty-third Legislature, Chapter 204, Acts of the Regular Session of the Forty-fourth Legislature and Chapter 459, Acts of the Second Called Session of the Forty-fourth Legislature, Vernon's Ann.Civ.St. art. 2603c.

The sole defense of the surety company is that the bond executed by it as surety was a statutory bond given under the provisions of art. 5160, V.A.C.S., and that appellant wholly failed to comply with its mandatory provisions in that it did not file an itemized statement of its account in the office of the County Clerk of the county where the work was done. The facts as to this failure were stipulated.

If the bond in suit was required by and given in pursuance to art. 5160 then there is no doubt that recovery cannot be had thereon against the surety for failure to follow the procedure outlined by the statute. Fidelity & Deposit Co. of Maryland v. Big Three Welding Equipment Co., Tex., 249 S.W.2d 183.

Appellant contends that the bond was neither required by nor given under art. 5160.

As to the latter contention there is no direct evidence that the bond was or was not given to comply with art. 5160. If the bond was required by this statute then the fact that the bond was given and is apparently sufficient under such statute would constitute some evidence that the bond was given in obedience to the law which required it. At any rate the burden was on appellant to prove that the bond was not given in order to comply with the statute and in this it has wholly failed.

Appellant's contention that the bond in suit was not required by art. 5160 is based upon the fact that the buildings constructed by A & M College were financed by the sale of revenue bonds which created no liability of the State for their payment and the assertion that A & M College was not included within the words "this State" as used in art. 5160.

Answering the latter contention first we quote the pertinent language of art. 5160:

"Any person, or persons, firm or corporation, entering into a formal contract wtih this State or its counties or school districts or other subdivisions thereof or any municipality therein for the construction of any public building, or the prosecution and completion of any public work shall be required, before commencing such work, to execute the usual Penal Bond, with the additional obligation that such contractor shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract."

Appellant cites no authorities to sustain its position. This is understandable because all of the authorities which we have examined seem opposed to the position taken by it.

In Royal Indemnity Co. v. American District Steam Co., Tex.Civ.App., 88 S.W. 2d 1091 (writ dism.) this Court held that a bond given under art. 5160 authorized, under the facts of that case, a judgment against the surety on such bond in favor of a materialman who supplied materials used in constructing a heating distribution system on the campus of the University of Texas.

In State v. Morgan, 140 Tex. 620, 170 S. W.2d 652, 653, the court held that the State was not engaged in a proprietary enterprise "in operating through A. & M. College the experiment station" at Amelia, Texas.

In Walsh v. University of Texas, Tex. Civ.App., 169 S.W.2d 993 (writ ref.) it was held that the University of Texas and its Board of Regents are institutions of the State neither having any existence independent of the State and that property belonging to the University is the property of the State.

See also Rainey v. Malone, Tex.Civ. App., 141 S.W.2d 713.

If all the various branches of the State Government were beyond the scope of Article 5160 then there would be little of the State left to be included within its terms. The Legislature was certainly aware, when it enacted art. 5160, that the State consisted of many branches and agencies. To name them all not only would have been quite a task but probably would have had the effect of excluding State Agencies later created. In any event we hold that the words "this State" as used in art. 5160 were intended to and do include A & M College and its governing board.

Appellant's contention that art. 5160 is inapplicable here because the construction at A & M College was financed by revenue bonds is likewise unsupported by authorities and is, in our opinion, without substance.

In the first place the statute does not limit its application to those contracts not financed by revenue funds and we have no authority to so limit it.

In the second place the evident policy of the State in enacting art. 5160 was to protect laborers and materialmen who worked upon or who supplied materials for the construction of public improvements whose valid claims could not be enforced by procuring a lien upon the property. This sound public policy is wholly unrelated to the source of the money to be used in payment for the improvements. Thus there is no logical or tenable reason for denying the applicability of art. 5160 in this case.

Regarding the alleged personal liability of Mr. Curtis, president of the electric company, the record discloses:

On September 25, 1939, the electric company through its president, Mr. Curtis, wrote appellant as follows:

"We have your letter of September 22, 1939, with your invoice (statement) attached for $6,352.72 and we find that we have paid you $700.00 and $419.59 which leaves a balance of $5,990.43 on the $7,000.00 contract of May 15, 1939. You will find your statement in error upon checking and we are returning it herewith.

"We also have no record of having ever received the 200 amp., 7500 volt Type M–50 non-auto oil circuit breaker. Kindly check through your shipping department and send us a bill of lading on this item.

"We would also like to know if you will accept our trade acceptance for 30 days for this balance payable at The Austin National Bank at Austin, Texas, and if so kindly make out one due October 31, 1939 and mail to us for our signature. Due to the fact that we have had some $325,000.00 of contracts all finishing at the same time some of our good manufacturers have favored us in this manner. Although our firm is a corporation the writer will personally guarantee and individually sign this trade acceptance if necessary to do so."

Appellant replied by letter dated October 4, 1939, as follows:

"We appreciated receiving your letter of September 25. Regarding the first paragraph, we believe the correct balance of your account is $6,352.72 as shown on our statement of September 22. If you will add the debits representing our invoices $466.19, $6.-10 and $7000.00 and subtract from the total the payments received $419.57 and $700.00, the result will be $6,352.-72.

"As suggested in the third paragraph of your letter, we are attaching 30 day Trade Acceptance due October 31. It it our request that to reduce the amount to even figures, you favor us

with check at this time for $1,352.72 and execute the attached instrument for $5,000.00 and return it to us. We appreciate your personal signature and guaranty in this matter and sincerely hope your contracts come through as expected.

"Regarding the second paragraph of your letter, we are taking up with our works at Pittsburgh, Pennsylvania, the matter of shipment of this equipment and have requested them to see that you are furnished with bill of lading and such other information as is necessary to substantiate shipment."

This letter was answered by Mr. Curtis for his company on October 9, 1939, in which, after giving facts and figures regarding the amount of the account, was stated:

"We are also returning your trade acceptance as you will note that it is made out for $6,000 whereas your letter states $5,000 is the amount, which is no doubt an error. We suggest that you remake the trade acceptance for 60 days being due Dec. 1, 1939 for $5,000 and we will send you our check for $886.53 immediately; and in the meantime you issue us a credit memorandum for $66.19 or correct your Inv. F–60,671 of 8/15/39 to $7000.00 less $466.19 or $6,533.81 and everything will be straight again."

This letter was answered by appellant on November 3, 1939, as follows:

"With reference to your letter of October 9, we have been successful in getting credit memorandum issued in the amount of $466.19 to cancel the additional and erroneous charge in this amount.

"This credit reduces the balance of your account to $5,886.53 and as suggested in your letter, we attach new trade acceptance for $5,000.00 dated October 30 due November 30 which we suggest you now execute and return

to us along with your check for $886.-53."

This ended the matter of trade acceptance. Mr. Curtis never executed a trade acceptance and appellant never, after November 3, 1939, requested Mr. Curtis to execute one.

■ In our opinion the above correspondence does not show a meeting of the minds of the parties sufficient to constitute a binding contract. Mr. Curtis suggested that the trade acceptance mature on December 1, 1939 but, assuming this suggestion to be the quivalent of an "offer," appellant's purported acceptance of November 3, 1939, called for a due date of "November 30." This was not identical with the offer and no contract resulted. Contracts, 10 Tex.Jur., Secs. 17 and 23.

On January 31, 1940, Mr. Curtis, in order to induce A & M College to pay his company the balance due on the contract between the company and the college, made an affidavit that all labor and material bills owing by the electric company in connection with the college improvements had been paid except some which are not involved here. Relying on the truth of this affidavit the college paid the electric company more than $15,000.

■ We are unable to formulate any sound legal theory upon which to base the personal liability of Mr. Curtis to appellant by reason of his having made the false affidavit just mentioned.

There is neither pleading nor evidence that appellant relied upon the statements made in the affidavit. Neither is there any pleading or proof that appellant suffered damage as a result of the false representations. Without these essentials appearing there was no basis for a judgment against Mr. Curtis on the ground of fraud. 20 Tex.Jur., Fraud and Deceit, Secs. 29 and 39.

The judgment of the trial court is affirmed.

Affirmed.