KENDALL COMPANY, Appellant,

v.

PLASTIC ENGINEERING & SALES
CORPORATION, Appellee.

No. 16251.

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 20, 1961.

Rehearing Denied Nov. 17, 1961.

Carrington, Johnson & Stephens, Hubert
D. Johnson and Hal M. Bateman, Dallas,
for appellant.

Simon & Simon, and Richard U. Simon,
Fort Worth, for appellee.

RENFRO, Justice.

Appellant, The Kendall Company, was de-
fendant in the trial court, and appellee,
Plastic Engineering & Sales Corporation,
was plaintiff below. From a $24,000 judg-
ment based on quantum meruit, Kendall ap-
peals.

At all pertinent times defendant was
manufacturer of a polyethylene plastic tape
known as Polyken, used as a corrosion pro-
tective coating over underground pipe lines.
Plastic of Fort Worth and Cathodic Pro-
tection Service of Houston were distribu-

tors for Kendall under Sales Development Distributor Franchise Agreements.

In the late spring of 1959, all three of the above named Companies learned that Old Ocean Fuel Company, a subsidiary of Texas Electric Service Company, planned to construct a gas pipe line from a point near Houston to Graham, Texas.

Plastic, Cathodic and Kendall all started contacts, visits, calls, etc., with Old Ocean Fuel Company in an effort to sell Polyken for the pipe line job. Old Ocean Fuel Company will be referred to as Buyer.

Kendall learned that both Cathodic and Plastic were working to make the sale of Polyken to the Buyer. Generally, Kendall worked with both its distributors but the distributors did not work with each other in their efforts to make the sale to Buyer. After considerable negotiations and preparation the Kendall Company submitted a bid direct to Buyer's Consulting Engineers on March 2, 1960, which was accepted two weeks later by the Buyer.

In the Franchise Agreement to plaintiff, Kendall reserved the right to make direct sales in special large volume situations. The Franchise provided in such cases Kendall might in its discretion appoint a sales development distributor to act as its agent. In a supplemental letter from Kendall, Plastic was named as special agent and the letter specified rate of commissions to be paid for transactions made in accordance with the published list price. The published list price in the letter to Plastic for the Polyken was $6.33 per unit. In the bid submitted to buyers direct Kendall reduced the price to $5.59 per unit.

The court, being of the opinion Plastic was not entitled to recover under contract as it had plead originally, submitted the case to the jury on its alternate plea of quantum meruit. The jury found the reasonable value of the services rendered by Plastic through its officers and agents in connection with the purchase by buyers of Polyken was $24,000.

Kendall's first point of error contends the trial court erred in rendering judgment in any amount because of a jury finding that Plastic was not the procuring cause of the purchase order of March 16, 1960, wherein the Buyer had placed an order for Polyken in the amount of $644,258.68 to Kendall Company, "c/o Plastic Engineering & Sales Corporation".

The foregoing contention is contrary to Kendall's position prior to, at the time of and following the sale of Polyken to the Buyer and contrary to the position taken by Kendall's witnesses on the trial of the case.

The witness Shaw, Western Regional Manager of the Polyken Sales Division of the Kendall Company, testified that he knew Plastic was assisting and working up the sale; that in February he called Plastic to get information to be used by Kendall in preparing its bid; that when he learned Kendall was to receive the order he went to the Buyer's office in company with another Kendall representative, where he was required to wait over an hour until Mr. Hollinger, General Manager of Plastic, arrived. When Hollinger arrived, Buyer handed the purchase order to him. The Buyer had previously informed Shaw he would not deliver the order to anyone except Plastic. Kendall later sent Plastic a check for $12,855.75, which was refused. The check represented 2% of the net billings on the tape involved. In the letter of transmittal J. T. Doyle, General Sales Manager of the Polyken Sales Division of the Kendall Company, stated in part: "You were informed at the time the Old Ocean Fuel Company order was placed that Plastic Engineering & Sales Corporation would receive a payment compensating you in total for your services to the extent to which the facts and our judgment on these facts measured your effective contribution to the total sales development * * *" and " * * * this is to inform you of the amount that you will be paid for your contribution."

Shaw testified that the check above referred to was payment to Plastic for services rendered. Shaw further testified in effect that the reason Plastic's commission was reduced was because the profits for both parties involved were less than they could have been.

The witness Stineback, Director of Sales of the Chicago Division of the Kendall Company, testified that as of the time of the trial it was Kendall's position that Plastic was entitled to a commission. He also recognized the contribution Plastic had made.

The witness Doyle testified that Plastic had made contributions to the sales effort; that he told Plastic on the first of February that Kendall was going to bid direct and that commissions would probably not be in excess of 4%.

On the morning of March 2, Shaw told Hollinger of Plastic that Kendall was going to pay a 4% commission and it would be decided later in what proportion a division would be made between the two distributors.

On March 18, after the sales order had been delivered to Polyken via Hollinger, Doyle wrote R. W. Seipel, Purchasing Agent of Buyer: "* * * we recognize your desire to have Plastic Engineering and Sales Corporation, Ft. Worth, participate in whatever compensation is paid by us for services rendered in connection with the Protective Tape Coating portion of the order, and we intend to make a payment to Pescor (Plastic) which is equitable under all the circumstances."

The record establishes that Kendall knew for several months that Plastic was endeavoring to make the sale. Kendall accepted the efforts of Plastic and called on Plastic for further services prior to the submission of the bid. Plastic performed all the services requested by Kendall. Kendall at all times, prior to filing answer to the instant suit, acknowledged an obligation to pay Plastic for its services. The only difference between the parties was how much commission Plastic had earned. Kendall's witnesses acknowledged from the witness stand that Plastic had earned some commission. They did not contend at the trial, as contended on appeal, that Kendall never owed Plastic anything.

■ In none of the written exhibits or testimony of plaintiff or defendants was there any requirement that Plastic be the procuring cause that brought about the sale of the Polyken. Under all the evidence and the circumstances of this case we think quantum meruit was properly submitted to the jury and judgment entered thereon.

■ The principle of recovery on quantum meruit is founded upon the rule that it is inequitable for the party to refuse to pay for the benefits he received or for work performed for him with his knowledge and consent by someone who is authorized to expect remuneration therefor. Kramer v. Wilson, Tex.Civ.App., 226 S.W.2d 675.

■ In view of the record before us, it was not necessary that Plastic be the procuring cause of the sale. Hussman v. Leavell & Sherman, Com.App., 32 S.W.2d 643.

In its second point of error Kendall contends that in no event should Plastic recover more than 2% of the net billings of the Polyken tape because of an express special contract between Kendall and Plastic. Kendall relies upon the following: On the morning of March 2, 1960, Shaw met Hollinger at the Texas Hotel Coffee Shop, told him that due to intense competition Kendall was submitting a direct bid to Buyer of $5.59 per unit and if a sale was made on that basis Kendall would pay the two distributors a total commission of 4% to be divided between them by Kendall; that Hollinger said nothing. On the afternoon of March 2, the bid was delivered by Shaw personally to Buyer's consulting engineers in Waco, Texas, and, as previously stated, was accepted by the Buyer approximately two weeks later.

The jury on ample evidence found that Plastic did not agree to and acquiesce in

such method of compensation as decided upon by Kendall. The total of 4% was not decided upon or agreed upon between the parties but said price was decided upon by Kendall and Plastic was not negotiated with or asked about the amount determined upon by Kendall but was "told" what it would be paid. This, of course, was after the bid had been prepared and nothing further remained to be done by either Kendall or Plastic except delivery of the bid to the consulting engineers for the Buyer.

The parties had no definite agreement, in view of the manner in which the whole matter was handled, as to amount of commissions Plastic would receive.

■■ In a suit on quantum meruit for services rendered the law fixes the measure of recovery, implying a promise to pay the reasonable value of the services. Colbert v. Dallas Joint Stock Land Bank, Com. App., 136 Tex. 268, 150 S.W.2d 771; 7 Tex.Jur., p. 525, sec. 124.

The point of error is overruled.

In view of what we have already said, Plastic's contention in its counterpoint that it is entitled to recover under the schedule set out in the contract is not tenable.

In its third and last point Kendall contends there was no competent evidence to support the jury finding that $24,000 was the reasonable value of Plastic's services.

For Plastic, Hollinger, General Manager, and Olson and Campbell, officers and stockholders of Plastic, testified as to the efforts they made in working up the sale of Polyken to the Buyer. There was evidence that Buyer was a strong believer in dealing with local people and the consulting engineer for Buyer testified that the fact Plastic was a Fort Worth concern certainly entered the picture.

The witness Seipel, Purchasing Agent for Buyer, testified it was a policy of the Buyer to place orders through local distributors, that he furnished his Company's consulting engineers with Plastic's name so it would receive an invitation to bid. He testified he would not deliver the purchase order made out to Kendall, c/o Plastic Engineering & Sales Corporation, to Kendall but had Kendall's representatives wait in his office until Hollinger arrived and then delivered the order to Hollinger.

The witness McIntosh of Cathodic testified the 2% commission paid by Kendall was not fair. Other testimony gave a reasonable commission as anywhere from $6,000 to the $53,281.21 figure that Hollinger testified would be a reasonable commission in the sale of the volume involved.

■ In view of the size of the transaction, the testimony as to the activities of Plastic, the testimony concerning the policy of Buyer to deal with local distributors and its insistence that Plastic's name be on the order and that it be personally delivered to Plastic, and in view of the record as a whole, we hold that the evidence was sufficient to uphold the jury finding on reasonable value.

All points of error are overruled and the judgment is affirmed.