**LOUISVILLE AND NASHVILLE RAIL-ROAD COMPANY, Appellant,**

**v.**

**Burley TOMLINSON, Thomas Tomlinson and Robert Tomlinson, Appellees.**

Court of Appeals of Kentucky.

Oct. 11, 1963.

Rehearing Denied Jan. 17, 1964.

James M. Terry, James F. Wheeler, Louisville, Henry L. Bryant, Pineville, Glenn W. Denham, Middlesboro, for appellant.

Carlos B. Pope, Barbourville, for appellees.

FAUST Y. SIMPSON, Special Commissioner.

This is an appeal from a judgment against the appellant L & N R. R. Company, in favor of the appellee Burley Tomlinson for $4650.00 for damages to his truck and in favor of appellees Thomas Tomlinson and Robert Tomlinson for $2485.00 and $4910.00 respectively for physical pain and suffering, loss of wages and doctors' and hospital bills as the result of an accident

at a grade crossing in Harlan County between the train of appellant and the truck of appellee Burley Tomlinson driven at the time by his son, the appellee Thomas Tomlinson, and in which the appellee Robert Tomlinson, another son, was a passenger. The appellant contends the trial court should have found for it because of the absence of negligence on its part, or because of conclusive proof of contributory negligence.

The railroad track in questions runs generally north and south from Norton, Virginia, to Corbin, Kentucky. Martin's Fork Branch parallels the track on the west and a county road roughly parallels the track on the east near the crossing where the accident occurred. To the north of the crossing some 1400 feet is the coal tipple of the V & C Coal Company, on the east side of the track, and between the coal tipple and the crossing is a wash house, about 325 feet north of the crossing. Opposite the tipple the railroad track curves to the right 7 degrees, then goes straight for 393 feet, and then makes an 8-degree curve to the right which continues to the crossing.

The county road runs parallel with the track and to the east of the tipple and wash house and then crosses the track at the place of the accident at an angle of about 30 degrees. The road at this point is about 4 feet lower than the railroad bed. The appellee Burley Tomlinson was operating a coal mine under lease with V & C Coal Company, the coal mine being located south of the crossing in question and on the east side of the railroad track. The appellee Thomas Tomlinson worked for his father hauling coal from the coal mines to the V & C tipple, above referred to. To get to the tipple it was necessary to cross the railroad track to the south of the crossing in question, then go north for a short distance and re-cross the track at the crossing in question, and then proceed to the tipple.

On the morning of the accident, Thomas Tomlinson on business for his father, Burley Tomlinson, with his brother as a guest passenger had been to the V & C Coal

Company tipple and was returning to his father's mine when the accident happened at the crossing in question. It was stipulated by the parties that the crossing where the accident occurred was a private crossing and that there were no sign posts or whistle post in connection with this particular crossing. The evidence was undisputed that there were 400 or 500 crossings per day by truckers, miners and residents in that vicinity. The evidence was conflicting as to whether or not the statutory signals were given. Both Thomas Tomlinson and Robert Tomlinson, as well as several other witnesses residing nearby, testified that no whistle was blown or bell rung. The train crew testified just as certainly that the signals by blowing the horn and ringing the bell were started at the Chevrolet crossing which was estimated to be from a half mile to a mile north of the accident crossing and the signals were given up to the time of the accident. Appellees' witnesses further estimated the speed of the train from 40 to 60 miles per hour, while appellant's train crew estimated the speed at 25 to 30 miles per hour.

The case was submitted to the Court without a jury and the Court found that (1) the crossing where the accident happened was a private crossing but used by the public generally and an extremely dangerous one; (2) the defendant's agents knew of the general use of the crossing by the public and acquiesced in its use and customarily gave signals of the approach of its trains; (3) no signal was given on the date of the accident; (4) the train was traveling at an excessive rate of speed; (5) the train crew failed to keep a proper lookout and (6) the driver of the truck and his guest both exercised ordinary care for their own safety and were not guilty of contributory negligence.

■ Under CR 52.01 findings of fact of the trial court shall not be set aside unless clearly erroneous and the panel is of the opinion that although we may have some doubt of the correctness of the finding, we cannot say and do not say that the first

five findings of the trial court are erroneous; however, we are of the opinion that the sixth finding, wherein he finds the appellee driver and guest passenger exercised ordinary care for their own safety, is clearly erroneous.

■ The appellee Thomas Tomlinson had driven this crossing many times daily and knew of the dangerous condition, as did the appellee Robert Tomlinson, although he did not travel the crossing as often as Thomas. Thomas Tomlinson testified he drove the truck upon the approach to the crossing at a very low rate of speed and looked up the track and down the track and could see nothing but because of the tilt of his truck he could only see 20 feet up the track. Robert Tomlinson testified the truck approached the crossing at a very slow rate and both he and his brother looked up the track and saw nothing and looked down the track and saw nothing and proceeded to cross and just as they got on the track the train appeared and hit them. According to his testimony, there is a curve in the track about 200 to 225 feet up the track but because of the truck turning to the right he could only see 160 feet up the track. The exhibits introduced by the appellant consisting of a plat of the area around the crossing and pictures taken shortly after the accident which showed without a doubt that one approaching the crossing in the direction the Tomlinson truck was going would have an unobstructed view up the track of not less than 500 feet and probably more as one picture taken from the crossing plainly shows the V & C Coal Company tipple which, according to the testimony, was 1400 feet up the track from the crossing.

The facts of this case are almost identical, even to the locale, with those in Louisville & N. Railroad Company v. Troutman, Ky., 351 S.W.2d 516. In that case we said:

"It is unquestioned that a railroad crossing is in itself a warning of danger and that a traveler having knowledge of its existence must exercise care for his own safety in such a degree as is proportionate to the danger then present or apparent of being struck by a train. * * * If he knows, or in the exercise of reasonable care and prudence must have known, of a train approaching by using his senses of sight and hearing in a way that an ordinarily prudent person would do under similar circumstances, and drives his automobile in front of the train, he assumes the risk of crossing in safety. If he miscalculates and is injured, he is guilty of contributory negligence."

The opinion concluded by holding the driver of the vehicle guilty of contributory negligence as a matter of law. We conclude likewise, that Thomas Tomlinson was guilty of contributory negligence but for which there would have been no accident; therefore, the judgment in favor of Thomas Tomlinson should be reversed and judgment entered for the appellant.

■ It is also well recognized in our jurisdiction that if a master or principal is injured by any negligence of a inferior servant or agent, who at the time is engaged in the service of such master or principal, and carrying out the duties of his employment in furtherance of the business and purposes of the master or principal, the negligence of the servant or agent is imputed to the master or principal. Chesapeake & O. R. Co. v. Warnock's Adm'x, 232 Ky. 340, 23 S.W.2d 558. As it is admitted that at the time of the accident Thomas Tomlinson was employed by his father, Burley Tomlinson, and was on business in furtherance of his father's business, the negligence of Thomas is imputed to his father and the judgment in favor of Burley Tomlinson must be reversed and judgment entered for appellant on his claim.

■ We also find Robert Tomlinson guilty of contributory negligence. He also knew of the dangerous nature of the cross-

ing and was in a better position to observe trains approaching from the north than the driver, and although by his own admission he had a clear and unobstructed view for 160 feet, he did not see the train until it was 20 feet from him. As said in Stephenson's Adm'x. v. Sharp's Ex'rs., 222 Ky. 496, 1 S.W.2d 957:

"He (the guest) must use ordinary care for his own safety, and when his means of observing obvious dangers are the same as or better than those possessed by the driver and he fails to observe them, or, observing them, fails to warn the driver, he is guilty of contributory negligence."

The judgment in favor of Robert Tomlinson should be reversed with direction to enter judgment on his claim in favor of appellant.

The opinion is approved and the judgments are reversed with directions to enter judgment for the appellant.