The **CITADEL CONSTRUCTION COMPANY, Inc., and American General Insurance Company, Appellants,**

v.

Chester **SMITH and United States Fidelity and Guaranty Company, Appellees.**

**No. 11919.**

Court of Civil Appeals of Texas, Austin.

June 21, 1972.

Rehearing Denied July 26, 1972.

Small, Herring, Craig & Werkenthin, C. C. Small, Jr., John F. Morehead, Lawrence S. Smith, Austin, for appellants.

Wood, Burney, Nesbitt & Ryan, James P. Ryan, Corpus Christi, for appellees.

O'QUINN, Justice.

This lawsuit is between the general contractor and a subcontractor on a public project for the construction of a building in 1968 and 1969 at Southwest Texas State University in San Marcos, Texas. Other parties are the surety companies for the respective principal parties.

Citadel Construction Company, Inc., prime contractor on the project, brought this suit against Chester Smith, who was the subcontractor of all lath and plaster work on the building, alleging breach of contract. Citadel sought to recover $163,526.75 for reasonable cost of completing Smith's contract, plus consequential damages in the sum of $23,874.01. After allowance of credit due Smith in the amount of $95,808.65, Citadel sought a net recovery of $91,592.11.

Chester Smith filed his counterclaim against Citadel in the sum of $66,703.96 for work and materials, $18,005.33 in retainage held by Citadel, and $2,298.55 as profit Smith alleged he would have earned if he had been permitted to complete the project.

American General Insurance Company, as surety for Citadel, and United States

Fidelity and Guaranty Company, as surety for Smith, were made parties to the suit.

On trial Citadel took the position that Smith's performance of his subcontract had been so slow that Citadel was forced to ask Smith to leave the job in February of 1969 and to complete the lath and plaster work at Citadel's expense. Smith's position was that his performance was at a proper rate and that if the rate of his performance was not satisfactory, this was due to Citadel's lack of coordination and supervision of the job.

All issues submitted to the jury were answered favorably to Smith. Upon the jury's findings, the trial court entered judgment against Citadel and American General, jointly and severally, in the sum of $60,312.50 plus interest.

Citadel and American General have appealed and bring four points of error.

Under the first two points appellants urge error in permitting appellees to introduce twelve exhibits that reflect claims Citadel initially made against Smith and against a tile subcontractor on the same job. The two claims were duplicated in part, and by the exhibits appellees were able to show inconsistencies between the first claim against Smith and the claim upon which Citadel finally relied in the trial.

Exhibit 16 constitutes the details of the claim Citadel made against the tile subcontractor. Exhibits 17 through 27 are parts of a file maintained by Citadel containing material upon which Citadel based its claim against Smith. It is undisputed that the two claims contained charges for identical material and labor, and that the duplicated charges were not properly included in the claim against Smith. The duplications were in excess of $58,800.

Appellants' position is that because appellees were unable to show any inconsistency between Exhibit 16 and any claim urged by Citadel against Smith at the trial, or any evidence Citadel introduced in support of its claim against Smith, it was error to admit Exhibit 16 for impeachment purposes. Citadel's principal witness as to the claim against Smith was B. F. Davidson, president of the company. Davidson's testimony was given in support only of the claim ultimately stated in Citadel's amended petition, and that claim did not include the duplications discovered before trial in the Smith claim and the claim against the tile subcontractor.

The position of appellees is that Exhibit 16 and Exhibits 17 through 27 were admissible to show a prior inconsistent statement of Davidson. The record shows that the materials found in all the exhibits were prepared and compiled for Citadel by a former employee, and that the materials in Exhibits 17 through 27 were delivered by Davidson to an accountant for Smith as the claim of Citadel against Smith. The accountant later obtained access to the materials found in Exhibit 16 which led to discovery of the extensive duplications amounting to more than $58,800.

Appellants contend that because Exhibits 17 through 27 are not "coextensive with Citadel's claim in the instant suit," the exhibits were admissible on the part of appellees only if inconsistent with Citadel's claim under evidence Citadel introduced in the trial. Appellants admit the existence of duplications of many items from the initial claim against the tile subcontractor, as shown by Exhibit 16, in the initial claim against Smith, as reflected by Exhibits 17 through 27. But appellants argue: "To allow Exhibit 16, into evidence because it is inconsistent with Exhibit 17–27 is to allow Smith to pile an inconsistency on top of an inconsistency."

Smith's accountant was permitted to testify from the exhibits and to point out items in the Smith claim that were also found in the claim against the tile contractor.

Appellants objected to introduction of Exhibit 16, stating to the trial court, ". . . the theory of admission of

. . . Exhibit No. 16 is that it is inconsistent with . . . Exhibit Nos. 17 through 27 . . . [and] the theory of admissibility propounded on Exhibits 17 through 27 is that it is inconsistent with what's alrpady [already] in evidence . . . We would . . . point out . . . that this is piling an inconsistency on an inconsistency and therefor is not relative or relevant to a prior inconsistent statement which has been made in this case from the witness stand or from any exhibit which has been admitted into evidence, and would object to the admission of . . . Exhibit No. 16 on this ground."

Smith's accountant testified that he had not examined the exhibits introduced by Citadel at the trial, and, being a witness placed under the rule (Rule 267, Texas Rules of Civil Procedure), was unable to say whether the claim represented by Exhibits 17 through 27 was the same claim Davidson had already testified to at the trial.

Appellants made objection, stating to the court, " . . . we're going to object to both Defendant's Exhibit Nos. 16 and the group Exhibit 17 through 27 as wholly irrelevant to the matter at issue before this Court, and object to further testimony on the part of the witness for purposes stated he testified about . . . [and] point out . . . that Plaintiff's Exhibit Nos. 1 through 110 have been offered, and marked, and in evidence in this case since . . . last week, with ample opportunity for this witness knowing that he was going to testify to have made an examination to see whether or not there was any relevancy to what he had to testify to as to what's been admitted in evidence . . . "

Appellees did not question Davidson while he was a witness at the trial about the materials Davidson had furnished Smith's accountant prior to trial. These materials, as Exhibit 16 and Exhibits 17 through 27, were offered for the first time through the accountant as a witness.

█ It is settled that a proper predicate generally must be laid before a witness can be impeached by introduction of prior inconsistent statements. International & G. N. R. Co. v. Boykin, 99 Tex. 259, 89 S.W. 639, 640 (1905); Thompson v. Denham, 250 S.W.2d 460 (Tex.Civ.App. Galveston 1952, writ ref. n.r.e.); Carrick v. Hedrick, 351 S.W.2d 659 (Tex.Civ.App. Amarillo 1961, no writ); Texas Law of Evidence, McCormick and Ray, 2d ed., sec. 692.

█ Timely objection must be made that no predicate was laid for admission of the evidence, offered to show a prior inconsistent statement and to impeach or contradict the witness, if the evidence is to be excluded. Morgan v. Fleming, 63 Tex. Civ.App. 432, 133 S.W. 736 (Galveston 1911, writ ref.). We find no objection by appellants to the introduction of Exhibit 16 and Exhibits 17 through 27 on the ground that a proper predicate had not been laid. The objections made were general in nature, the grounds being lack of relevance or materiality. An objection in general terms is insufficient to require consideration by an appellate court Sternenberg v. Marshall, 257 S.W.2d 312, 319 (Tex.Civ. App. Austin 1953, writ ref. n.r.e.); Texas Law of Evidence, McCormick and Ray, 2d ed. sec. 25.

Davidson was in attendance throughout the trial and could have been recalled for further questioning in order to lay a proper predicate if objection to the exhibits had included want of such predicate as the grounds for excluding the exhibits. Stating clear and specific grounds for excluding evidence enables the trial court "to make an intelligent ruling" and "affords the offering party an opportunity to remedy the defect if possible." Texas Law of Evidence, McCormick and Ray, 2d ed. sec. 24, vol. 1, p. 23.

Appellants' points one and two are overruled.

Under appellants' remaining points, three and four, contention is made that (1) judgment against American General was erroneous because there were no issues properly submitting the correct theory of recovery and that (2) it was error to render judgment against American General for the difference between the amount previously paid Smith and the value of Smith's work as of February 12, 1969, the date Citadel required Smith to leave the job.

The issues to which appellants objected in the trial court, and which on appeal they argue failed to submit a correct theory of recovery, are Issues Nos. 7 and 8. Issue 7 inquired as to the "reasonable value . . . of the total work completed by Chester Smith under his contract . . . [as of] February 12, 1969." Issue 8 asked the jury to find " . . . the reasonable value . . . of the total work completed by Chester Smith under his contract . . . by the end of October, 1968."

In answer to Issue 7, the jury found $157,250.00 was the reasonable value of work completed on February 12, 1969. The trial court arrived at the basic figure in the joint and several judgment against Citadel and American General by subtracting from $157,250.00 payments of $95,737.-50 which Citadel had made to Smith during construction and the sum of $1,200, a sum agreed upon by counsel in settlement of claims of Citadel against Smith.

By this procedure, appellants contend, the trial court "allowed Chester Smith a *quantum meruit* recovery against American General instead of a recovery for labor and materials furnished, as required by Article 5160 [Vernon's Ann.Civ.St.]."

Appellants insist that Smith should have presented evidence, consisting of his bills on materials and his labor costs, to prove the value of materials and labor furnished, and that the total of these categories properly constituted the limit of the surety's liability. We have concluded that the trial court applied the correct theory and that the judgment properly held Citadel and American General, jointly and severally, liable for the reasonable value of partial completion, less the sums previously paid by Citadel to Smith.

Article 5160, Vernon's Anno.Civ.Sts., requires the claimant, giving periodical notices to the contractor and the surety, to present with the notice a sworn statement of account with allowance for all prior payments known to the claimant. When the claim is based on a written contract, as in this case, the claimant may furnish a copy of the agreement and advise "completion or value of partial completion" of the contract. Art. 5160, subd. B(a).

A subcontractor is defined under the statute as " . . . any person . . . who has furnished labor or materials or both . . . to fulfill an obligation to the prime contractor . . . to perform and install all or part of the work required by the prime contract." Art. 5160, subd. C(c). This subsection also states: "A subcontractor shall have a claim, but such claim, including previous payments however, shall not exceed that proportion of the subcontract price which the work done bears to the total of the work covered by the subcontract."

A claimant whose claim remains unpaid after sixty days following the filing of the claim is authorized "to sue the principal and the surety . . . jointly or severally for the amount due on the balance thereof unpaid at the time of filing the claim or of the institution of the suit . . . ." Art. 5160, subd. B. The payment bond required of the contractor must be " . . . in the amount of the contract, solely for the protection of all claimants supplying labor and material . . . in the prosecution of the work provided for in said contract, for the use of each such claimant." Art. 5160, subd. A(b).

Appellants argue that Smith was not entitled to judgment against the surety for any sum that might include compensation for items such as profit figured in the con-

tract, over and above "the cost of labor and materials he furnished."

■■ We are convinced that the design of the statute, upon reading the Act as a whole, expresses a legislative intent that the surety, together with the principal, be held liable to a subcontractor for the reasonable value of the balance unpaid on the contract at the time of making the claim, with allowance for prior payments. Not to be included in such recovery against the surety are amounts claimed for damages for breach of contract or loss of anticipated profits which might have been realized if the subcontractor had been allowed to complete his work. The trial court carefully separated from the award against both surety and principal an award to Smith for loss of anticipated profits, which was assessed in the judgment against Citadel alone.

The McGregor Act (Article 5160) in a significant number of its provisions bears evidence that the statute was drawn after the pattern found in the Miller Act (40 U. S.C.A. secs. 270a–270d) a federal statute on the same subject. Johnson Service Company v. Climate Control Contractors, Inc., 478 S.W.2d 643, 645–646 (Tex.Civ. App. Austin 1972, no writ).

■ Appellants have cited no Texas cases expressly dealing with the issue raised under point three, and appellees state they have found none on the question. From an examination of the McGregor Act and the Miller Act in cases decided by federal courts construing the Miller Act, we reach the conclusion that since the payment bond must be "in the amount of the contract," such elements as overhead, supervision, and profit, being implicit in the contract, are not to be denied the subcontractor even as against the surety. Both statutes authorize suit on the payment bond against principal and surety for the amount, or the balance, unpaid on the contract at the time of suit or date of the claim. As already suggested, anticipated profits beyond the date of the

claim and damages for breach of contract are not elements of recovery fairly to be understood as a part of the agreement between the subcontractor and the prime contractor so as to be covered by the surety bond.

■ Recovery by the subcontractor against the surety is not limited, however, to the actual cost of materials and labor. As stated by one federal court, "Out-of-pocket expense is not the limit of the fair value of labor and materials." Arthur N. Olive Co. v. United States, 297 F.2d 70, 73 (1 Cir. 1961); see Continental Casualty Co. v. Schaefer, 173 F.2d 5 (9 Cir. 1949). The subcontractor performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract, and his efforts, as with the efforts of the prime contractor, contribute to the ultimate production of the project.

■ The McGregor Act must be accorded a liberal interpretation to achieve the intent of the Legislature in requiring payment bonds "in the amount of the contract, solely for the protection of all claimants supplying labor and material . . . in the prosecution of the work provided for in said contract . . ." United States Fidelity and Guaranty Co. v. Henderson County, 276 S.W. 203 (Tex.Comm. App.1925), motions for rehearing overruled 276 S.W. 1119; Art. 5160, subd. A(b).

Under their final point, appellants contend that although Smith "timely presented claims relating to labor and materials delivered between October 1, 1968 and February 12, 1969," the date Citadel forced Smith to leave the job, no recovery against American General may be had for work and materials prior to October 1. Appellants insist that " . . . for this judgment to be proper [as to the surety] Smith would have had to secure from the jury a finding that the payments made relate solely to work done prior to October 1." The essence of this argument appears to be that part of the money awarded Smith in the

judgment was earned before October 1, and that Smith is not entitled to retain this award because it was not covered by a valid claim under Article 5160.

We have examined the record with care and conclude that this position is not supported by the evidence. We agree with appellees that Citadel was current with payments through August, 1968, when Citadel paid Smith late in September, and that, by early December, Citadel had more than paid Smith's billing for September, in an amount in excess of $44,676.00, leaving a credit balance in Citadel's favor in excess of $12,000.00. Claims after September, as appellants admit, were timely filed, constituting the basis for Smith's claims in this lawsuit.

Appellants' points three and four are overruled.

Judgment of the trial court is in all things affirmed.

Affirmed.

SHANNON, J., not sitting.