The CITY OF INGLESIDE, Appellant,

v.

T. R. STEWART, d/b/a L & S Air Conditioning Co., Inc., Appellee.

No. 1111.

Court of Civil Appeals of Texas, Corpus Christi.

March 31, 1977.

Rehearing Denied June 30, 1977.

Second Rehearing Aug. 31, 1977.

Bruce D. Viles, Wood, Burney, Nesbitt & Ryan, Corpus Christi, for appellant.

Mark H. Giles, Stone, Berryman & Giles, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is an appeal from a judgment against the City of Ingleside which awarded $4,700.00 and interest to L & S Air Conditioning Company, Inc. The suit was brought by the Air Conditioning Company to recover for the installation of the heating and air conditioning system in the criminal justice facility in Ingleside, Texas. Trial was to the court. From this judgment the City has perfected its appeal to this Court.

In August of 1970, the City sustained considerable damage to its facilities as a result of Hurricane Celia. One of the buildings damaged was the City Hall. It was decided by the City Council to rebuild and remodel this structure and turn it into a criminal justice facility. This rebuilt facility was to house the Municipal Court, the Police Department and offices for the Department of Public Safety. In connection with this rebuilding project, Charles Bellah, a Corpus Christi architect and engineer was hired to design several structures including the subject Criminal Justice Building. The funding for the construction of the building was obtained through the Celia relief fund and a matching grant from the Texas Criminal Justice Council in the total amount of $48,375.00. Bids were solicited for the project and the construction contract was awarded to Sherrahl D. Smith for the exact amount. Subsequently, Smith, subcontracted the heating and air conditioning work to the appellees for $5,075.00.

In late August or early September of 1971, the City became dissatisfied with the progress being made on the facility by contractor Smith. Smith had already received $17,186.23 in draws, and was requesting additional funds, when it was determined that the subcontractors were not being paid. It was then the joint opinion of the City's Mayor, Jerry Storms, and the Project Architect and Engineer, Charles Bellah, that contractor Smith was not entitled to any additional draws from the City for the project, at least at that time. On recommendation of the architect, the City instituted a dual payee check system to insure that the various laborers and subcontractors would be paid. Under this dual-payee system, each check drawn from the Criminal Justice Facility fund was made out to contractor Smith and the laborer or subcontractor to be paid. The contractor would periodically come to the City's offices, endorse the checks, and the City would then have the checks either picked up by the appropriate payees, or delivered to their places of business. This procedure was maintained until December of 1971, when the fund became virtually exhausted.

The appellees began working on the building in October of 1971, after receiving a phone call from someone purporting to be Rick Diegel, the then mayor pro tem of the City, stating that it was time to install the heating and air conditioning units. On October 31, 1971, appellees prepared an interim bill for $3,187.00 addressed to Diegel at the City Hall. This bill was not paid. On December 1, 1971, the appellees completed the work on the building and prepared a final billing in the amount of their contract

($5,075.00), and addressed the bill to the same Rick Diegel at Ingleside City Hall. This bill was likewise not paid. In April 1972, after the City had commenced using the facilities, one of the fans in the air conditioning system malfunctioned. The City contacted the appellee Air Conditioning Company and requested repairs to be made. The appellee company removed the fan from the building, but because they had not been paid for the job, refused to repair or return the fan.

The City never paid appellee for its work. The appellee did not choose to collect from contractor Smith, choosing instead to sue the City. The case was tried to the court without a jury. At the conclusion of the trial, judgment was rendered for appellees in the amount of $4,700.00 plus pre-judgment interest at 6% from December 1, 1971 through January 26, 1976, and post-judgment interest at a rate of 9%. In response to a request by the City, the trial judge made extensive findings of fact and conclusions of law, all of which are germane to the City's points of error presented by this appeal.

■ The City in points of error 1–23 complains of the findings of fact made by the trial court in support of its judgment that appellees are entitled to recover $4,700.00 based on quantum meruit. This Court in reviewing no evidence and insufficient evidence points of error based on the trial court's findings of fact must use the same test for factual sufficiency as is applied to jury answers. *V. K. Hall v. Villarreal Development Corporation*, 522 S.W.2d 195 (Tex.Sup.1975). Therefore, in considering the City's "no evidence" points of error, we must look only to that evidence which supports the trial court's findings and disregard all other evidence to the contrary. In reviewing the City's "insufficient evidence" points of error, we must consider and weigh all the evidence in the record and set aside the trial court's verdict if we conclude that the evidence is insufficient to support the trial court's findings. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). Calvert "No Evidence and Insufficient Evidence Points of Error", 38 Tex.L.Rev. 359 (1960).

■ The most recent definition of quantum meruit was stated in *Black Lake Pipe Line Company v. Union Construction Company, Inc.*, 538 S.W.2d 80 (Tex.Sup.1976). The court said that ". . . the right to recover in quantum meruit is based upon a promise implied by law to pay for beneficial services rendered and knowingly accepted." See *Davidson v. Clearman*, 391 S.W.2d 48 (Tex.Sup.1965); *McDaniel v. Tucker*, 520 S.W.2d 543 (Tex.Civ.App.—Corpus Christi 1975, no writ). Quantum meruit is a principal of equity based on the theory that if one performs work for another and such work is accepted by the other, non payment for such work would result in an unjust enrichment to the party benefited by the work. *University State Bank v. Gifford-Hill Concrete Corporation*, 431 S.W.2d 561 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n. r. e.); *Kramer v. Wilson*, 226 S.W.2d 675 (Tex.Civ.App.—Fort Worth 1950, writ ref'd n. r. e.).

■ The necessary elements of recovery under quantum meruit were set out by this Court in *Montes v. Naismith and Trevino Construction Company*, 459 S.W.2d 691 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.). These elements are: 1) valuable services were rendered or materials furnished; 2) for the person sought to be charged; 3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; 4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. See *Colbert v. Dallas Joint Stock Land Bank*, 136 Tex. 268, 150 S.W.2d 771 (1941); *Rogers-Hill & Co. v. San Antonio Hotel Co.*, 23 S.W.2d 329 (Tex.Comm'n App.1930, holding approved); *Olivares v. Porter Poultry & Egg Company*, 523 S.W.2d 726 (Tex.Civ.App.—San Antonio 1975, no writ); *Crockett v. Sampson*, 439 S.W.2d 355 (Tex.Civ.App.—Austin 1969, no writ). See also *Kendall Company v. Plastic Engineering & Sales Corporation*, 350 S.W.2d 661 (Tex.Civ.App.—Fort Worth 1961, writ ref'd n. r. e.); *Kramer v. Wilson*, supra.

At least 7 witnesses testified that the heating and air conditioning system was installed in the Criminal Justice Building for the City of Ingleside by the appellee company. The President, T. R. Stewart, testified that he expended $5,075.00 in equipment and labor while installing the heating and air conditioning system. This testimony was substantiated by appellee's various exhibits which represented appellee's estimates for the work performed and the invoices for the equipment purchased for the building. There were several witnesses, including members of the City Council in 1971 and 1972, who testified that the services rendered by the appellee were accepted by the City and were used and enjoyed by the City.

■ This brings us to the final elements of quantum meruit: whether the services rendered and the equipment furnished by appellee were accepted and used by the City under such circumstances as would reasonably notify the City that appellee expected the City to pay for its work. The basis for a claim in quantum meruit is either an express or implied agreement to pay for the work. *Stone Company, Inc. v. Carminati*, 317 S.W.2d 78 (Tex.Civ.App.—Fort Worth 1958, no writ); *Wyche v. Perrin*, 228 S.W.2d 330 (Tex.Civ.App.—Dallas 1950, writ ref'd n. r. e.). See also *Electric Wire & Cable Co. v. Ray*, 456 S.W.2d 260 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n. r. e.); *Schneider v. Delwood Center, Inc.*, 394 S.W.2d 671 (Tex.Civ.App.—Austin 1965, writ ref'd n. r. e.); *Johnson v. Walker*, 330 S.W.2d 508 (Tex.Civ.App.—San Antonio 1959, no writ).

■ Ms. Rosalie Eddings, who was secretary and bookkeeper for the appellee company, testified that Mr. Diegel, the City's mayor pro tem, called her on three or four occasions and told her he was from the City of Ingleside and that it was time for the air conditioning company to install the heating and air conditioning system. As a result of these calls, appellee commenced the work on the facilities. Mr. Diegel denied that he had instructed the appellee to commence the work. He did state that he may have

called them in connection with the electrical work that he was personally doing on the building. The City objected to the testimony of Ms. Eddings. Ms. Eddings admitted that she had never met Diegel nor had she ever talked to him on the telephone prior to this particular occasion. Generally, proper authentication is necessary if such evidence is to be admissible for the purpose as here claimed. However, authentication may be accomplished by circumstantial evidence such as the fact that the particular communication reveals to the recipient that the caller had knowledge of facts that only the person sought to be identified could have known such facts. *Texas Candy & Nut Co. v. Horton*, 235 S.W.2d 518 (Tex.Civ.App.—Dallas 1950, writ ref'd n. r. e.).

■ Shortly after the receipt of the alleged calls, the appellee company in fact went to Ingleside and commenced its work on the building. The evidence showed that the building was completed to the stage where it was ready for the installation of the air conditioning and heating system. Mr. Diegel admitted that he was present on the job when the air conditioning work was being done because he had to re-route some of his electrical work caused by the appellee's air conditioning duct work. There is no evidence that Diegel, or the City in particular, objected to appellee's presence at the job. The City did, in fact, accept and ratify the work that had been completed by the appellee company, as will be discussed hereinafter. Even though it may have been error for the trial judge to permit Ms. Eddings to testify as to these phone calls from Mr. Diegel ordering appellee to do this work, there was other evidence that the City impliedly agreed to pay the appellee for its work.

The trial court specifically found and the evidence supports such findings that the City initiated a dual payee system and took over the job when the contractor overspent his withdrawals. The record showed that the City assumed and undertook the duties of the general contractor and paid the laborers and subcontractors. The City maintained a labor payroll chart and went so far

as to open a special bank account to pay into such account the withholding taxes of the various laborers and materialmen. The City's own architect testified that the general contractor left the job when it was only 40 to 50% completed. He stated that he was the one who suggested to the City that they require Smith and the payee to endorse the remaining checks for work performed on the job. Finally, he testified that the City, through its mayor and the mayor pro tem actually took over the supervising of the work on the facility after the contractor left. It was only reasonable to expect that those who were doing work on this job expected the City to pay them for their work and materials. The evidence also showed that the City had available funds from which to pay the general contractor, the architect, and subcontractors, not only at the time the appellee commenced the work, but even after appellee finished the installation of the heating and air conditioning system. Although there was conflicting evidence, we hold that the evidence is legally and factually sufficient to support the trial court's findings of fact on each of the necessary elements for recovery in quantum meruit.

The City, in points of error 24–29, complains of the action of the trial court in not holding that appellee's remedy should have been against the general contractor's payment and performance bond and not against the City. The City argues under these points of error that appellee's sole and exclusive remedy was against contractor Smith on his payment and performance bond as required by Tex.Rev.Civ.Stat.Ann. art. 5160 (Supp. 1976). There is no question that contractor Smith should have been required to provide a payment and performance bond. The work which he contracted to do was on a public building which was exempt from any claims of mechanic's and materialmen's liens by subcontractors. He therefore should have been required to provide such a bond for their benefit. The record reflects, however, that contractor Smith failed to post such a bond upon the advice of the City's architect. The architect advised the City that it should have the

general contractor take out a life insurance policy naming the City as beneficiary in place of the bond. The City's argument really begs the issue which they present. The City in effect is saying that even though the City did not follow the law in requiring the contractor to have a bond, the subcontractor appellee is limited to bring suit on the bond and against the general contractor and not against the City.

▮ The purpose of the bond is to protect the subcontractors, not municipalities. *Citadel Construction Company v. Smith*, 483 S.W.2d 283 (Tex.Civ.App.—Austin 1972, writ ref'd n. r. e.); *Allis-Chalmers Mfg. Co. v. Curtis Electrical Co.*, 259 S.W.2d 918 (Tex.Civ.App.—Austin 1953) rev'd on other grounds 153 Tex. 118, 264 S.W.2d 700 (1954). The fact that a contractor fails to provide the prescribed bond does not avoid the whole contract. It simply becomes voidable at the election of the governmental unit involved. *Overstreet v. Houston County*, 365 S.W.2d 409 (Tex.Civ.App.—Houston 1963, writ ref'd n. r. e.). It is, therefore, logical to assume that the bond requirement can be waived by an agency of the State. As was demonstrated in *Overstreet v. Houston County*, supra, the governing body involved may, upon discovery of the failure to provide a bond, choose not to set aside the contract.

▮ In the case at bar, the record clearly reflects that the City was aware that contractor Smith did not have a bond and chose to allow him to continue under his contract. It is entirely reasonable for a subcontractor to assume that the governmental agency, in executing a construction contract covered by Article 5160 will follow the law and require the general contractor to provide a bond. However, if such governmental agency should choose not to require the bond, then it should also not be heard to claim that a subcontractor's only remedy for nonpayment is against the general contractor on the bond it did not require and that it knew he did not have. Neither party has cited us any authorities in point and we can find none. However,

we feel that the equities involved in this case clearly are contrary to the appellant's arguments. In addition, we hasten to point out that the City stepped into the shoes of the general contractor and chose to supervise and finish the job and pay some of the laborers and subcontractors. In such a case, the City is now estopped to deny this subcontractor's claim for payment. The City's points of error 24–29 are overruled.

In its points of error 30–34, the City attacks the findings and conclusions of the trial court that Article 11, § 7 of the Texas Constitution was not applicable to this case. This article provides, in part, that no debt for any purpose may be incurred by a City or County covered by the section unless provision is made at the time of creating the debt for levy and collecting a sufficient tax to pay the interest on the debt and also provide at least 2% as a sinking fund for debt retirement. The trial court in one of its conclusions of law held that Article 11, § 7 was inapplicable because the City already had a fund with which to pay for the construction of the building. We agree. The key word in Article 11, § 7 is debt. The City in question must be creating a debt before this section of the constitution becomes applicable. The record clearly indicates that none of the City's own money was used to build the Criminal Justice Facility. The construction contract was executed and the building constructed exclusively with funds from the Celia relief funds and with a matching grant from the Texas Criminal Justice Council. The term "debt" as it is used by Article 11, § 7 means any pecuniary obligation imposed by contract except such as were to be satisfied out of some fund then within the immediate control of the corporation. *Stevenson v. Blake,* 131 Tex. 103, 113 S.W.2d 525 (1938, opinion adopted). Obviously, the funds used to pay for the construction constituted another fund within the immediate control of the City from which the debt could be satisfied.

Regardless of all the testimony offered by the City to the effect that no fund was ever created by the City to pay appellee at the time the debt was incurred, the record is clear that sufficient funds were available for its payment. The City's points of error 30–34 are overruled.

In points of error 40–42, the City complains of the amount of the judgment awarded against it. As with almost every issue in this case, the testimony concerning the value of appellee's services varies sharply. T. R. Stewart, President of appellee company, testified, naturally, that the value of the job was what he charged, $5,075.00. David Locher, an expert witness for appellee, testified that in his opinion the job done by the appellee company was worth about $250.00 less than the bid price or $4,875.00. The City's expert witness testified that to have gone back into the building in 1971, after it was completed, and brought the entire system into the specification in the architect's plans would have cost $3,780.00 additional. However, he also testified that the maximum value of the system as it was installed was $4,500.00. There was a considerable amount of testimony concerning the variations in the system installed and the one specified. Several witnesses testified in varying detail as to the cost of items omitted from the specified system and of modifying the whole system. The trial court awarded appellee $4,700.00 finding that the City was entitled to an offset of $375.00 for defects in the system. As was stated in *Bratcher v. Moore,* 219 S.W.2d 527 (Tex.Civ.App.—Amarillo 1949, no writ), in an action on quantum meruit, the cost of correcting any defects may be adjudged as an offset to be deducted from the reasonable value of plaintiff's services and materials. We hold that the evidence is sufficient to support the trial court's findings of the amount of the judgment.

In its point of error number 43, the City complains of the action of the trial court in assessing prejudgment interest. The trial court in its judgment awarded appellee prejudgment interest at a rate of 6% from December 1, 1971 through January 26, 1976. It is settled rule in Texas that where damages are established as of a definite time and the amount thereof is defi-

nitely determinable, interest is recoverable as a matter of right from the date of the injury or loss. *Black Lake Pipe Line Company v. Union Construction Company, Inc.,* 538 S.W.2d 80 (Tex.Sup.1976); *McDaniel v. Tucker,* 520 S.W.2d 543 (Tex.Civ.App.—Corpus Christi 1975, no writ). If damages are definitely determined by written instrument or fixed rules of evidence and known standards of value, interest is recoverable as a matter of right from the date of injury. *Ambox, Inc. v. Stewart & Stevenson Services, Inc.,* 518 S.W.2d 428 (Tex.Civ.App. —Houston [14th Dist.] 1975, writ ref'd n. r. e.). The test is whether or not the measure of the recovery or claim (and not necessarily the amount) is fixed by conditions existing at the time the claim arose or the injury was inflicted. *Metal Structures Corporation v. Plains Textiles, Inc.,* 470 S.W.2d 93 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.). The record clearly demonstrates that appellee's claim was established as of a definite date and that the measure of their claim was fixed as of this date. The City's point of error number 43 is overruled.

The City in points of error 35–39 objects to the finding and conclusion of the trial court that the City had ratified its acceptance of appellee's work by making use of the system and by requesting that the appellee make repairs on the system after it had been accepted and after it was being used. Initially, it should be noted that appellee did not plead any theory of ratification or estoppel.

■ One of the fundamental elements of ratification is knowledge. One who has purportedly ratified an agreement must have knowledge of all material facts before ratification will be found. *Rourke v. Garza,* 530 S.W.2d 794 (Tex.Sup.1975); *Norman v. Safway Products, Inc.,* 404 S.W.2d 69 (Tex. Civ.App.—Dallas 1966, no writ); *Williams v. Hooks,* 333 S.W.2d 184 (Tex.Civ.App.— Beaumont 1960, no writ).

■ It is apparent to us from all the evidence that was introduced, that the parties tried the issue of ratification by implied consent under Rule 67, T.R.C.P. The trial court found that in 1971, the City accepted appellee's work and subsequently ratified that acceptance by requesting that appellee company make repairs on one of the fans. Although the trial court made no finding that the City had knowledge of all the material facts before committing the ratifying act, the evidence supports such a finding. The record shows that in January 1972, the City received appellee's final bill for $5,075.00 and in April of 1972, T. R. Stewart, President of appellee company, contacted the City about payment. As early as January 1972, the City's Director of Finance and Assistant City Secretary had received appellee's final bill for its work. Then, in April of 1972, T. R. Stewart, the President of appellee's company, personally contacted Mr. Bounds, the City mayor and sought to collect his bill from the City. The testimony concerning the repair work indicates that the appellee company was contacted by someone from the City and asked to come out and repair the fan some 6 months after the work was completed. This would be in May or June of 1972. Since the City requested appellee to repair the system after they clearly had knowledge that appellee sought to charge them for the system, their action amounts to ratification of an implied contract that they would pay appellee for its work.

We have carefully considered all of appellant's points of error and they are overruled. The judgment of the trial court is AFFIRMED.

AFFIRMED.

### OPINION ON MOTION FOR REHEARING

Appellant City of Ingleside's motion for rehearing has been carefully considered and is found to be without merit. Appellant has also filed a motion relating to costs wherein he requests this Court to retax or readjudicate the cost on appeal pertaining to the fee of the official court reporter in this cause. In addition to ruling on appellant's motion for rehearing in this cause and the motion relating to the cost involved, this Court also rendered an opinion

this day in cause number 1132 in which the question of the constitutionality of Art. 2324 (which attempted to set the fee of the court reporter) and/or the reasonableness of the court reporter's fee was also determined. See *City of Ingleside v. T. R. Stewart, d/b/a L & S Air Conditioning Company, Inc.,* Docket Number 1132. (Tex.Civ. App.—Corpus Christi, June 30, 1977) (not yet reported).

A motion to adjudge cost involves an assessment by the court as to who shall pay the cost, while a motion to retax cost involves the question of the amount of cost assessed. *Reaugh v. McCollum Exploration Co.,* 140 Tex. 322, 167 S.W.2d 727 (1943) and followed by this Court in *Smith v. State,* 500 S.W.2d 682 (Tex.Civ.App.— Corpus Christi 1973, no writ). There have been repeated statements by courts of this State that a motion to retax cost is one to correct the ministerial act of the clerk of the court in tabulating cost. *Wood v. Wood,* 159 Tex. 350, 320 S.W.2d 807 (1959); *Hammonds v. Hammonds,* 158 Tex. 516, 373 S.W.2d 603 (1958); *Reaugh v. McCollum Exploration Co.,* supra; *Hartzell Propeller Inc. v. Alexander,* 517 S.W.2d 455 (Tex.Civ. App.—Texarkana 1974, no writ); *Smith v. State,* supra. It is interesting to note, however, that prior to the amendment of Art. 2324 (Supp. 1977) the motion to retax the costs was available to a litigant to test the reasonableness of a court reporter's fee in the Court of Civil Appeals. In both *Reaugh v. McCollum Exploration Co.,* supra and *Southland Life Ins. Co. v. Statler,* 141 Tex. 110, 170 S.W.2d 714 (1943) the question before the Supreme Court was whether or not a court reporter's fee was reasonable for transcribing the record. In both cases the court refused to rule on the motion, stating that that question was one to be determined by the Court of Civil Appeals since that was the court in which the cost arose. However, in 1975 the legislature amended Art. 2324 and provided that the trial court should determine the reasonableness of a court reporter's fee until the Supreme Court so provided under its rule making authority. The legislature by the 1975 amendment deprived this Court of its original ancillary jurisdiction to decide this question as determined by prior case law. For these reasons appellant's motion relating to costs is denied.

Due to the fact that this case and cause number 1132 are intimately connected we must make special provisions for the mandate should mandate issue from this Court. Since we affirmed the judgment of the trial court, mandate will issue on behalf of T. R. Stewart d/b/a L & S Air Conditioning Company, Inc. 30 days after this judgment in this cause becomes final. Mandate as to the cost of the statement of facts shall not issue in favor of the party against whom cost shall be assessed until the judgment of this Court in cause number 1132 shall become final.

Appellant's motion for rehearing is overruled.