ALLIS-CHALMERS MANUFACTURING COMPANY V.
CURTIS ELECTRICAL COMPANY ET AL

No. A-4310. Decided February 10, 1954.
(264 S.W. 2d Series 700)

*Dan Moody,* of Austin, for petitioner.

*James R. Meyers* and *Coleman Gay,* both of Austin, for respondents.

MR. JUSTICE WILSON delivered the opinion of the Court.

The parties will be identified as in the trial court. See 259 S.W. 2d 918 for opinion of the Court of Civil Appeals.

Plaintiff furnished electrical equipment used by the Curtis Electrical Company (a corporation) as electrical subcontractor in the construction of dormitories upon the campus of the Agri-

cultural & Mechanical College of Texas. Although the Curtis Company defaulted in their payment, the plaintiff did not comply with Art. 5160, V.A.C.S. This suit is against Curtis' bonding company upon the theory that the bond was not a statutory bond and against Charles E. Curtis individually on a promise to guarantee personally the debt. If the bond falls within Art. 5160, V.A.C.S., there can be no recovery against the surety company. Fidelity and Deposit Company of Maryland v. Big Three Welding Company, 151 Texas 278, 249 S.W. 2d 183.

■ Plaintiff contends that the bond is not within Art. 5160 because the building was financed by the sale of revenue bonds under Ch. 5, Acts of the Second Called Session of the 43rd Legislature; Ch. 204, Acts of the Regular Session, 44th Legislature; and Ch. 459, Acts of the Second Called Session of the 44th Legislature. Vernon's Am. Civ. Stat. Art. 2603c. The question is whether buildings constructed under these acts are the result of "a formal contract with this state or its counties or school districts or other subdivisions thereof or any muncipality therein for the construction of any public building." Plaintiffs say that because the state is exempted from liability the Board of Directors of A. & M. College acts as a separate entity in issuing revenue bonds for the building of dormitories. We agree with the Court of Civil Appeals in overruling this contention and hold that the Board of Directors of A. & M. College is an agency of the State within the meaning of Art. 5160 in erecting a dormitory upon the campus of A. & M. College to be financed by revenue bonds issued under the statutes cited above. See cases cited and discussed by the Court of Civil Appeals and see also State of Arkansas v. State of Texas, 346 U.S. 368, 74 Sup. Ct. 109, 98 Law Ed. 71.

■ On September 19, 1939 plaintiff billed Curtis upon "Regular terms; Net cash 30 days payable in Milwaukee-Chicago-New York Exchange." On September 25th Curtis wrote plaintiff that he would personally guarantee a 30-day trade acceptance due October 31, 1939, in the amount of $5,990.43. On October 4, 1939, plaintiff wrote Curtis asking for a check in the amount of $1,352.72 and execution of a trade acceptance due October 31st in the amount of $5,000.00, but by mistake sent a trade acceptance in the amount of $6,000.00. On October 9, 1939, Curtis wrote plaintiff returning the $6,000.00 trade acceptance and suggesting a 60-day trade acceptance in the amount of $5,000.00 due December 1, 1939. On November 3, 1939, plaintiff wrote Curtis a letter containing the following statement:

"* * * we attach new trade acceptance for $5,000.00 dated October 30 due November 30 which we suggest you now execute and return to us * * *."

Curtis did not execute this trade acceptance.

The effect of this negotiation was that Curtis started off with a request that his payment be delayed for 30 days from September 25th. This delay was achieved as a result of the negotiation about mistakes in the account. Had Curtis' first offer been accepted he would have had to pay this account on October 25th. On October 4th plaintiff wrote asking for a trade acceptance due October 31st. On October 9th Curtis suggested a 60-day trade acceptance due December 1st. Since the period was actually 51 days this amounted to an offer to pre-date the instrument. Plaintiff's reply to this was its trade acceptance dated October 30th and due November 30th. This amounts to a substantial meeting of the minds. In the ordinary course of business this account should have been paid by October 19th. A difference of one day in the maturity is not substantial since Curtis did gain the delay he was seeking. There is no proof that the one day difference materially affected the parties or adversely affected Curtis in any manner. This cause of action is not upon the acceptance itself but upon Curtis' promise to endorse it personally.

The judgment of the Court of Civil Appeals is reversed to the extent that it denies a recovery against Curtis personally in the amount of $5,000.00 and judgment is here so rendered. Costs are taxed against Chas. E. Curtis.

Opinion delivered February 10, 1954.

MR. JUSTICE GRIFFIN, joined by JUSTICE CALVERT, dissenting.

I am in agreement with the majority opinion insofar as it holds that the building contract and bond fall within the provisions of Article 5160, Vernon's Annotated Civil Statutes; and the petitioner, not having compiled with the requirement of Article 5160, cannot recover.

I cannot agree that C. E. Curtis is individually liable to petitioner. For him to be liable there must have been a contract—a meeting of the minds—between petitioner and Curtis that Curtis should be liable. Curtis' liability is predicated solely upon an exchange of letters between the parties.

On September 22, 1939, petitioner wrote a letter to Curtis Electrical Company, hereafter referred to as the Company, requesting payment of a stated balance claimed to be due. On September 25, 1939, Mr. Curtis, on behalf of the Company, replied by letter in which he disputed the amount of the claimed balance due, and made the following offer: "We would also like to know if you will accept our trade acceptance for *30 days* for this balance payable at The Austin National Bank at Austin, Texas, and if so kindly make out one *due October 31, 1939* and mail to us for our signature. * * * Although our firm is a corporation the writer (Curtis) will personally guarantee and individually sign this trade acceptance *if necessary to do so*." (Emphasis added.) Also in this letter the Company claimed the true amount due was only $5,990.43 instead of the claimed $6,352.72, and itemized the credits to which the Company was entitled. On October 4, 1939, petitioner replied to the Company's letter of September 25th, and petitioner again contends that the correct statement of the account due by Company is the sum of $6,352.72, as shown in their letter of September 22nd, and further requested that a check be sent for $1,352.72 and a trade acceptance for $5,000.00, due on October 31, 1939 be executed. This letter also said, "We appreciate your personal signature and guaranty in this matter, * * *." However, the trade acceptance enclosed for execution was in the sum of $6,000.00 instead of $5,000.00. We do not believe that it can, or will be, contended that there has been any meeting of the minds on the same contract thus far. There has been no acceptance of the offer made in the letter of the Company dated September 25, 1939. The minds had not met on the amount due, nor had a trade acceptance for $5,000.00 been tendered for execution. On October 9, 1939, the Company wrote petitioner disputing the amount of the balance claimed by petitioner to be due, and in this letter the Company claims only an unpaid balance of $5,886.53 as against the $5,990.43 claimed in its letter of September 25th. This letter also changes the offer as follows: "We are also returning your trade acceptance as you will note that it is made out for $6,000.00 whereas your letter states $5,000.00 is the amount, which is no doubt an error. We suggest you remake the trade acceptance for 60 days being due Dec. 1, 1939, for $5,000.00 and we will send you our check for $886.53 immediately * * *." Petitioner did not reply to this letter until November 3, 1939, when it wrote the Company stating that they had been successful in getting through a credit memorandum on the balance, and stating: "This credit reduces the balance of your account to $5,886.53 and as suggested in your letter, we attach new trade acceptance for $5,000.00 dated October 30 due November 30 which we suggest

you now execute and return to us along with your check for $886.53." The trade acceptance was never executed, nor the check ever sent. These letters (which was all the evidence on the making of a contract) clearly show the minds of the parties did not meet on the identical terms of the contract. Petitioner in its letter of November 3rd, did not unconditionally accept the terms of the offer from the Company as set out in its letter of October 9, 1939. That letter called for a 60-day trade acceptance due December 1, 1939, whereas petitioner tendered a 30-day trade acceptance due on November 30, 1939.

As I understand the law of contracts, it has long been settled that before a contract can be made between parties there must be a meeting of the minds of the parties upon identical terms of the contract. The acceptance must be unqualified and unconditional, and in the exact terms of the offer. 10 Texas Jur. 42, Contracts, Sec. 23; 12 Am. Jur. 543, Contracts, Sec. 53; 17 C.J.S. p. 378, Contracts, Sec. 42. One of the most recent statements of this rule is found in the case of Garrett v. International Milling Co., Texas Civ. App., 223 S.W. 2d 67, 72 (1-6), no writ history, wherein it is said:

"In Summers v. Mills et al, 21 Texas 77, the Supreme Court said: 'It does not matter that the difference of terms between the parties may not seem to be very material. If a diversity exists, that fact is enough. To make a contract there must be a mutual assent. "The assent must comprehend the whole of the proposition; it must be exactly equal to its extent and provisions, and it must not qualify them by any new matter." If the answer, "either in words or effect, departs from the proposition, or varies the terms of the offer, or substitutes for the contract tendered one more satisfactory to the respondent," there is no assent and no contract. Pars. Con. 400. "If a proposition be accompanied with certain conditions or limitations, the acceptance must correspond to it exactly, for if any alteration be suggested, or any exception be made to its exact terms, the provisional acceptance becomes merely a new proposition, which also requires an acceptance." '

"The following additional authorities support the above propositions: Browne Grain Co. v. Walker, Texas Civ. App., 206 S.W. 859; Whitaker v. Zeihme et al, Texas Civ. App., 61 S.W. 499; Womack v. Dalton Adding Machine Sales Co., Texas Civ. App., 285 S.W. 680; Great West Grain & Seed Co. v. Ray, Texas Civ. App., 204 S.W. 2d 26, writ refused, no reversible error; Moore Bros. v. Kirkpatrick, Texas Civ. App., 172 S.W. 2d 135." 1st. col., p. 72, 2nd par.

Many other authorities holding the same could be cited. This is an elemental, fundamental and universal rule of contracts, and so far as I have been able to determine my research I have found no Texas case which holds to the contrary. The majority opinion says that the difference of one day is not material, and that it was a substantial compliance with the offer. The answer to such an argument is that Curtis never at any time offered to make a trade acceptance due on November 30, 1939, so his mind could not possibly have been in agreement—or have met with the mind of petitioner—on such date. It is a well known fact in the business world that by far a greater number of bills are payable on the first of a month, rather than on any other day. Curtis likely had a good reason for wanting this trade acceptance due on the first of a month, rather than the last day of a month. Whatever his reason, the offer he made was to pay on December 1, 1939, and that offer was never unequivocally, unconditionally and exactly accepted. Therefore, I say there was never a completed contract whereby Curtis personally became bound to pay this trade acceptance. Unless he agreed to pay it, he is not bound to pay it. I have shown there never was any meeting of the minds on this trade acceptance; therefore, there can be no contract; therefore no individual liability by Curtis. I cannot agree to change such a well-established and wholesome rule of contracts as the one long followed which says the parties themselves must make their own contracts through the meeting of the minds. Unless their minds have met on the terms, I do not believe courts should make contracts for parties who have not made them for themselves.

I would hold that Curtis is not individually liable.

MR. JUSTICE SMITH also dissenting.

I cannot agree with the majority opinion wherein it denies the petitioner a recovery against the respondent, American Indemnity Company.

The petitioner filed this suit against respondents, Curtis Electrical Company, Charles E. Curtis, and American Indemnity Company to recover against them a balance due on a contract between Curtis Electrical Company and the petitioner. Judgment was entered in the trial court against Curtis Electrical Company for the balance due under the contract. This part of the judgment has become final and is not before this Court. The trial court denied petitioner a recovery against Charles E. Curtis and the American Indemnity Company. The Court of Civil Appeals

has affirmed the judgment of the trial court in favor of the last named respondents.

Petitioner contends that the performance bond executed by the American Indemnity Company was not required by Article 5160, Vernon's Annotated Civil Statutes, but was given independently of any statutory requirement. I think the terms and conditions of the contract involved have an important bearing on the question of whether or not the statutory requirements apply. The terms of this contract are identical with those of the general contract between W. S. Bellows Construction Company and The Board of Directors of The Agricultural and Mechanical College of Texas.

Paragraph 13 of the contract reads as follows:

"13th. And it is hereby mutually agreed between the parties hereto that the sum to be paid by the Owner to the Contractor for said work and materials shall be Seventy Five Thousand Eight Hundred Thirty and 00/100 Dollars ($75,830.00) subject to the additions or deductions on account of alterations hereinbefore provided, and that such sum shall be paid in current funds by the Owner to the Contractor in installments as follows: Eighty-five per cent (85%) of the value of work and materials incorporated in the building or buildings and fifty per cent (50%) of the value of acceptable materials stored upon the site for use in the buildings, upon estimate issued by the Architect once every thirty days, if required, and the balance after the entire completion and acceptance of the work.

"It being understood that the final payment shall be made within ten days after this contract is completely finished, with the exception of ten per centum of total contract price which (at option of Owner) shall be held for 30 days, for protection of labor, as provided by law; provided, that in each of the said cases the Architect shall certify that all the work upon the performance of which the payment is to become due has been done to their satisfaction; provided, further, that before each payment, if required, the Contractor shall give the Architect good and sufficient evidence that the premises are free from all liens and claims chargeable to the said Contractor, and, further, that if at any time there shall be any lien or claim for which, if established, the Owner or the said premises might be made liable, and which would be chargeable to the said Contractor, the Owner shall have the right to retain out of any payment then due or thereafter to become due, an amount sufficient to completely indemnify it against such lien or claim, until the claim

shall be effectually satisfied, discharged or cancelled. And should there prove to be any such claim after all payments are made, the Contractor shall refund to the Owner all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the former's default. And it is further understood and agreed that the Contractor shall and will pay off and satisfy all claims of sub-contractors or others for labor or material furnished upon said building, and which may be found to be justly due and owing, whether or not the same can be established as a lien against said property for which said property or the Owner would be liable; it being the true intent and meaning hereof that the Contractor shall pay off and satisfy all bills incurred for labor and material in the erection of said building and found to be justly due and owing, whether established as liens or not."

The majority has affirmed the judgment of the Court of Civil Appeals holding that the contract here involved, which was between respondent, Curtis Electrical Company and the Board of Directors of A. & M. College, was a contract with the State. The opinion cites the case of Fidelity & Deposit Company of Maryland v. Big Three Welding Equipment Co., Inc., 151 Texas 278, 249 S.W. 2d 183 as authority for the holding that the bond falls within Article 5160, Vernon's Annotated Civil Statutes, and, therefore, the petitioner cannot recover because of its failure to comply with the provisions of the statute. The petitioner contends that the question here involved has never been before the courts of this or any other jurisdiction and is one of first impression. I agree with this position. The cases cited by the Court of Civil Appeals and the majority opinion have no application here. The Big Three Welding Company case, supra, involved a contract between the City of Houston and Shannon Company, Incorporated. The performance bond was executed by Shannon Company, Inc., as principal, and the Fidelity & Deposit Company of Maryland, as surety. The contract did not contain provisions we find in paragraph 13 and other provisions of the contract here under consideration. The case of Employers' Liability Assur. Corporation, Limited, v. Young County Lumber Co., 122 Texas 647, 64 S.W. 2d 339, has no application in the case at bar. It reached this Court by way of certified question from the Court of Civil Appeals. The certificate recites that John T. Ables entered into a contract with Archer County, and that " ' * * * to insure the faithful performance of the contract Ables executed a bond with the Employers' Liability Assurance Corporation, Limited, as surety, in accordance with the requirements of article 5160, Rev. Civ. Statutes, as amended by the 41st Legisla-

ture in 1929.' " The certificate states that the sub-contractor's bond, executed by Alderson & Smith, with Employers' Liability Assurance Corporation, Limited, as surety, was given under the provision of Article 5472c. The bond recites that these claimants had filed their claims with the County Judge of Archer County and that the bond was given to enable the sub-contractors to collect from Archer County the amounts due those claimants. " '* * * The bond further recites that the principals and surety bound themselves to pay to those claimants "the amounts of the liens so claimed by them with all costs, in the event same shall be proven to be liens upon the property against which said obligers assert their liens, namely, the moneys due and to become due John T. Ables under his original contract with Archer County, Texas." ' "

The certificate further recites that on January 27, 1930, John T. Ables with the same surety executed another bond in favor of certain other persons who had furnished service and labor. " '* * * The principal and surety bound themselves to pay to the claimants or their assigns the "amounts of their respective claims, or such portion or portions thereof as may be proved to have been levied under the terms of chapter 17, General Laws of the State of Texas, * * * (Vernon's Ann. Civ. St. arts. 5472a, 5472b) * * *" ' " " 'The bond further recites that Ables was executing and filing the same because he desired to file with Archer County, Texas, a bond pursuant to and conditioned as provided, * * * by Article 5472b-1, Rev. Civ. Statutes, 1925.' " Again, in this case, as in the Big Three Welding Company case, supra, we have a clear demonstration that the contract and contractor's bond were executed in strict compliance with the terms of Article 5160, and the two other bonds were executed in accord with other articles of the statute. The provisions were read into the contracts and bonds and considered as a part of such instruments. There was no material difference between the conditions in the bonds and the conditions in the statute. The provisions of the contract and the condition of the bond when considered together, as they properly should be considered, clearly demonstrate that the bond is not a statutory bond. For example, Article 5160, supra, provides that after completion and acceptance of a project all moneys due contractor shall be held by the State or its counties or school districts or other subdivisions thereof or any municipality until such time that satisfactory evidence is submitted and affidavits made by the contractor that all just bills for labor and material under the contract have been paid by the contractor.

The contract in this case contains an entirely different provision. It provides that final payment shall be made within ten days after the contract has been completely finished, "with the exception of ten per centum of total contract price which (*at the option of owner*) shall be held for 30 days * * *." (Emphasis added.)

Article 5160, supra, provides that "* * * all claims for labor and material furnished to any contractor shall be itemized and sworn to as required by Statutes as to mechanic's lien claims, and such claims shall be filed with the County Clerk * * *." And, Article 5472a, Vernon's Annotated Civil Statutes, provides: "That any person, * * * furnishing any material, apparatus, fixtures, machinery or labor to any contractor for any public improvements in this State, shall have a lien on the moneys, or bonds, or warrants, due or to become due to such contractors for such improvements; provided, such person * * *, shall, before any payment is made to such contractor, notify in writing the officials of the State * * * whose duty it is to pay such contractor of his claim." How can it be successfully argued that these articles shall be considered as a part of a contract and bond when the instruments contain provisions wholly repugnant thereto? The contract under consideration contains the following provision: "And it is further understood and agreed that the Contractor shall and will pay off and satisfy all claims of sub-contractors or others for labor or material furnished upon said building, and which may be found to be justly due and owing, *whether or not the same can be established as a lien against said property for which said property or the Owner would be liable; it being the true intent and meaning hereof that the Contractor shall pay off and satisfy all bills incurred for labor and material in the erection of said building and found to be justly due and owing, whether established as liens or not.*" (Emphasis added.)

There is nothing unlawful or in violation of public policy contained in this contract, and it is not so claimed. The contract was entered into pursuant to Chapter 5, Acts of the Second Called Session of the 43rd Legislature; Chapter 204, Acts of the Regular Session, 44th Legislature; and Chapter 459, Acts of the Second Called Session of the 44th Legislature. The bond guaranteed the performance of the contract regardless of whether liens were established or not. I have been unable to find any case wherein the contract contained such provisions as found in the contract under discussion. The respondent, American Indemnity Company, assumed obligations by executing the performance

bond which go beyond and are independent of any statutory requirements.

The debt claimed by petitioner has been established by judgment of the court and has not been satisfied. The bond was "made for the use and benefit of all persons, firms and corporations who may furnish any material or perform any labor for or on account of said work, building or improvement, and they, and each of them are hereby made obligees hereunder, the same as though their own proper names were written herein as such, and they and each of them may sue hereon, and no change of, or deviation from, the time, manner or amount of payments to the Contractor * * * shall affect or in any manner release the liability of the surety on this bond." The performance bond was in favor of A. & M. College and not to the State of Texas. The contracts involved were not entered into "with this state or its counties or school districts or other subdivisions thereof or any municipality therein for the construction of any public building, or the prosecution and completion of any public work" in the sense that the State of Texas would in any manner be deemed liable. But, on the contrary, the statutes, supra, expressly provide that all undertakings under the contract between the Board of Directors of A. & M. College and the contractor shall be "without cost to the State of Texas." The American Indemnity Company, one of the respondents herein, was charged with knowledge of this fact, and the further fact that the members of the Board could not and would not be held individually liable. To release the surety company from liability in this case will work an injury to the laborer and the materialman. The respondents in this case guaranteed performance independently of any statutory requirement. The majority opinion requires the petitioner to perform a useless act for its protection. Under the record in this case it had protection without the necessity of establishing a lien. The Big Three Welding Company case, supra, holds that in order to recover the materialman must show that he has established a lien as required by statute, and the majority opinion in this case recognizes such holding was erroneous. However, I am of the opinion there exists a distinct difference between the provisions of the two bonds and contracts.

Petitioner's point that the respondent, Charles E. Curtis, under the evidence, is liable for the debt of the Curtis Corporation should be sustained. I, therefore, concur with the majority on this point for the following reasons: On September 25, 1939, Charles E. Curtis, President of Curtis Electrical Company, in a letter addressed to petitioner, admitted that the corporation was

indebted to petitioner, and proposed to sign a trade acceptance due October 31, 1939. In this connection it was stated in the letter that "Due to the fact that we have had some $325,000.00 of contract all finishing at the same time some of our good manufacturers have favored us in this manner. Although our firm is a corporation *the writer will personally guarantee and individually sign this trade acceptance if necessary to do so.*" (Emphasis added.) In this same letter it was also mentioned that the balance due was not as much as stated by petitioner in its letter of September 22, 1939. On October 4, 1939, petitioner replied to the letter of September 25, 1939, and with reference to the proposal of respondent, Charles E. Curtis, to personally guarantee and individually sign the trade acceptance, said "We appreciate your personal signature and guaranty in this matter and sincerely hope your contracts come through as expected." This letter also referred to the balance due, and that matter of shipment of certain equipment mentioned in the letter of September 25th was being presented to "our works in Pittsburgh, Pennsylvania, * * * and have requested them to see that you are furnished with Bill of Lading and such other information as is necessary to substantiate shipment."

On October 9, 1939, Charles E. Curtis, in behalf of the Curtis Electrical Company, addressed another letter to petitioner wherein it was stated that the balance due was the sum of $5,886.53. The last paragraph of the letter reads: "We are also returning your trade acceptance as you will note that it is made out for $6,000 whereas your letter states $5,000 is the amount, which is no doubt an error. We suggest that you remake the trade acceptance for 60 days being due Dec. 1, 1939 for $5,000 and we will send you our check for $886.53 immediately; and in the meantime you issue us a credit memorandum for $66.19 or correct your invoice F-60,671 of 8/15/39 to $7,000 less $466.19, or $6,533.81 and everything will be straight again." On November 3, 1939, in a letter addressed to Curtis Electrical Company, petitioner agreed that the balance due was $5,886.53, and attached a new trade acceptance for $5,000 dated October 30, 1939 due Nov. 30, 1939. The letter suggested the execution and return of the trade acceptance "along with your check for $866.53."

Mr. Curtis voluntarily offered to personally guarantee and, if necessary, sign the trade acceptance. Apparently his company was involved financially when he made the offer to personally guarantee and sign the trade acceptance. The offer was accepted

by the petitioner, and the fact that the trade acceptance was never signed does not and should not relieve Mr. Curtis from liability. The matter of trade acceptance and the individual guarantee was proposed by Curtis and his company, and not by the petitioner. In determining what Mr. Curtis intended and what petitioner understood his offer to mean, and whether or not a binding agreement was made, we must look to the correspondence. The real subject matter as reflected by the letters was the desire on the part of Curtis to obtain an extension of time to pay the debt. His purpose was to personally guarantee payment of the debt, and the trade acceptance was identical with his directions and offer except it provided that the note should be due November 30, whereas, he suggested the due date was to be December 1, 1939. In my opinion, the evidence is convincing that a contract was entered into between the parties whereby Mr. Curtis was obligated and did guarantee the payment of the debt involved just as though he had actually signed the trade acceptance. The due date was not of importance to him. In fact, the record reflects that on January 31, 1940, he made an affidavit, which the Court of Civil Appeals says was a false affidavit, swearing on oath that "* * * and all bills for materials furnished and labor performed to or for Curtis Electrical Company, Inc., and all subcontractors in connection therewith have been fully paid off and satisfied, except as listed below." Petitioner was not one of the exceptions listed. The minds of the parties met on the real substance of the contract and its purpose. While it is true there must be an offer expressed or implied, and that this offer must be accepted according to its tenor before a binding contract is formed, the rule that an acceptance must be absolute should be applied with caution and the language construed so as not to defeat the intent of the parties. 1 Elliott on Contracts, Secs. 25 and 39; see Sec. 26, 1 Elliott on Contracts.

I would reverse and render the judgments of the trial court and the Court of Civil Appeals.

Opinion delivered February 10, 1954.