OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

May 24, 2002

The Honorable Rick Perry
Governor of Texas
Office of the Governor
P. O. Box 12428
Austin, Texas 78711

Opinion No. JC-0507

Re: Clarification of Attorney General Opinion JC-0426: Whether a state university may contract with a bank that employs a member of the board of regents as an officer (RQ-0473-JC)

Dear Governor Perry:

You request reconsideration of Attorney General Opinion JC-0426, which determined that the common-law conflict-of-interest rule barred Texas Woman's University ("TWU" or "the University") from contracting with a bank in which a regent of the University was pecuniarily interested as an officer and employee.[1] That opinion addressed section 51.923(c) of the Education Code, which modifies the common-law conflict-of-interest rule by allowing a university to contract with a corporation even though a regent is a director or stockholder in the corporation. This office concluded that Education Code section 51.923(c) did not modify the common-law conflict-of-interest rule for a regent who was an officer or employee of a business entity as opposed to a director or stockholder and, accordingly, did not authorize the University board of regents to contract with the bank that employed its regent.

Attorney General Opinion JC-0426 did not consider whether Government Code section 404.0211 authorized the bank in question to serve as a depository bank for the University. You ask us to consider whether this statute applies to an institution of higher education, such as Texas Woman's University. See Pemberton Brief, supra note 1, at 2-4. You also ask us to address other issues, including the legislative history of Education Code section 51.923(c) and judicial and legislative developments relevant to Texas common-law conflict-of-interest. See id. at 4-5. We have considered these matters and conclude that Government Code section 404.0211 does not apply to the selection of a depository by an institution of higher education and that Attorney General Opinion JC-0426 was correctly decided.

Section 404.0211 of the Government Code provides that a bank may serve as a depository for funds of a state agency even though one or more officers of the agency who have the duty to select the depository "are officers or directors of the bank or own or have a beneficial interest,

---

[1]Brief from Bob Pemberton, Deputy General Counsel, Office of the Governor, to Honorable John Cornyn, Texas Attorney General at 2 (Dec. 4, 2001) (on file with Opinion Committee) [hereinafter Pemberton Brief].

individually or collectively, in 10 percent or less of the outstanding capital stock of the bank." *See* TEX. GOV'T CODE ANN. § 404.0211 (Vernon 1998). This provision does not modify the common-law conflict-of-interest rule for state agency officers who are employees of the bank. *Cf.* TEX. EDUC. CODE ANN. § 45.204(a) (Vernon 1996) (bank is not disqualified from serving as a school district depository even though member of school board is a stockholder, officer, director, or employee of a bank). Thus, even if section 404.0211 of the Government Code did apply to the board of regents of Texas Woman's University, the regent about whom you inquire, as a bank employee, has an interest in the bank that bars the University from contracting with it as a depository. The question you have raised is nonetheless an important one which we will address in full.

Chapter 404 of the Government Code sets out duties of the Comptroller of Public Accounts that were formerly assigned to the State Treasurer. *See* TEX. GOV'T CODE ANN. § 404.0211 (Vernon 1998). Section 404.0211 is found in subchapter C, chapter 404 of the Government Code, which addresses the designation of state depositories and the investment of state funds. With certain exceptions, state agencies are to deposit all funds they collect or receive in the state treasury. *See id.* §§ 404.093-.094 (Vernon 1998 & Supp. 2002); *see also* Tex. Att'y Gen. LO-92-069, at 2-5 (auctioneer education and recovery fund collected by Texas Commission of Licensing and Regulation did not have to be placed in state treasury). The Comptroller is required by law to deposit state funds in state depositories, which are financial institutions that the Comptroller has designated to serve as depositories. *See* TEX. GOV'T CODE ANN. § 404.021 (Vernon 1998) (financial institutions eligible to be designated by Comptroller as state depositories). He or she is authorized to "adopt and enforce rules governing the establishment and conduct of state depositories . . . that are not inconsistent with the law governing the depositories." *See id.* § 404.013; *see also id.* §§ 404.022 (Vernon 1998 & Supp. 2002) (application process for designation as state depository); .0221 (Vernon 1998) (eligible collateral); .023 (Vernon 1998 & Supp. 2002) (Comptroller shall designate state depository banks in cities to use for clearing checks); .024(a) (Comptroller may determine amount of state funds to be deposited in time deposits). Thus, the Comptroller is primarily responsible for choosing depositories for state funds.

Section 404.0211 of the Government Code, however, applies where persons other than the Comptroller participate in choosing a depository bank. It provides that "[a] bank is not disqualified from serving as a depository for funds of a state agency" if "one or more officers or employees of the agency who have the duty to select the agency's depository are officers or directors of the bank or own or have a beneficial interest, individually or collectively, in 10 percent or less of the outstanding capital stock of the bank." *Id.* § 404.0211 (Vernon 1998). A majority of the board members must vote in favor of choosing the bank and the interested officer or employee may not vote or take part in the proceedings. *Id.* Section 404.0211 thus applies to a state agency board authorized to choose a depository for its funds instead of depositing them in the treasury. *Id.; see also id.* § 2306.119 (Vernon 2000) (Department of Housing and Community Affairs shall choose depository for operating funds of housing finance division); Tex. Att'y Gen. Op. No. MW-264 (1980) (authority of Texas Housing Agency to choose a depository for its revenues and funds under prior law); Tex. Atty. Gen. LA-132 (1977) (state agencies with authority under former law to hold funds outside of state treasury). The predecessor of section 404.0211 was adopted in 1967 as "[a]n

Act relating to the selection and qualification of depositories of all agencies and political subdivisions of the state." Act of April 26, 1967, 60th Leg., R.S., ch. 179, 1967 Tex. Gen. Laws 370 (former article 2529c of the Revised Civil Statutes); *see also* TEX. LOC. GOV'T CODE ANN. § 131.903 (Vernon 1999) (present codification of language relating to depositories of political subdivisions). Section 404.0211 modifies the common-law conflict-of-interest rule by allowing a governmental body to choose a bank as its depository even though one of its members has a pecuniary interest in the bank, and the 1967 enactment acknowledged this change. *See* Act of April 26, 1967, 60th Leg., R.S., ch. 179, § 2, 1967 Tex. Gen. Laws 370, 371 (stating that common-law rules in conflict with the act are modified).

You maintain that section 404.0211 on its face applies to Texas Woman's University because a state university is a state agency. *See* Pemberton Brief, *supra* note 1, at 2. You cite in support of this conclusion section 572.002(10)(B) of the Government Code, which defines "state agency" to include "a university system or an institution of higher education as defined by Section 61.003, Education Code, other than a public junior college." TEX. GOV'T CODE ANN. § 572.002(10)(B) (Vernon 1994 & Supp. 2002). The University is an institution of higher education as defined by Education Code section 61.003 and is thus a "state agency" for purposes of Government Code chapter 572. *See* TEX. EDUC. CODE ANN. § 61.003(3), (4), (8) (Vernon 1996 & Supp. 2002). However, Government Code section 572.002(10)(B) defines "state agency" only for purposes of chapter 572, which relates to financial disclosure, standards of conduct, and conflict of interest of state officers and employees. *See* TEX. GOV'T CODE ANN. §§ 572.001 (Vernon 1994) (policy statement); .002(10)(B) (Vernon 1994 & Supp. 2002) (giving meaning of state agency "[i]n this chapter"). This definition does not apply to section 404.0211 of the Government Code. Section 404.0211 docs not define "state agency" or assert that it applies to an institution of higher education. *See id.* § 404.0211 (Vernon 1998). We do not agree that section 404.0211 applies on its face to TWU.

We look to the rule of construction that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." *Id.* § 311.011(a) (Vernon 1998). The legislature has enacted a number of statutes that distinguish between a "state agency" and a "state institution of higher education." The term "state agency" is sometimes defined to include an "institution of higher education." *See id.* §§ 556.001(2)(B) (Vernon 2002) (political activities of certain public entities and individuals); 2167.005 (Vernon Supp. 2002) (delegation by Texas Building and Procurement Commission of authority to enter into lease contracts for space); 2256.001-.002(13) (Vernon 2000 & Supp. 2002) (Public Funds Investment Act). Other statutes define "state agency" to exclude "an institution of higher education." *See id.* §§ 404.092 (Vernon 1998) (State Funds Reform Act); 2053.001(1) (Vernon 2000) (report by Governor on organization and efficiency of state agencies); *see also Allis-Chalmers Mfg. Co. v. Curtis Elec. Co.*, 264 S.W.2d 700, 701 (Tex. 1954) (board of directors of Texas A&M College is an agency of the state within statute applicable to formal contract "'with this state or its counties or school districts . . . for the construction of any public building'"). Given the legislative practice of expressly stating that the term "state agency" does or does not include an "an institution of higher education," wc cannot say that the term "state agency" by common usage includes an institution of higher education.

We next look at the context in which section 404.0211 appears. It is included in subchapter C of chapter 404 of the Government Code, a comprehensive set of provisions governing the deposit of state agency funds in the treasury and in state depositories. In contrast, a different group of provisions governs the management and deposit of funds received by institutions of higher education. Sections 51.001 through 51.009 of the Education Code provide for the control of certain funds by institutions of higher education, as that term is defined by section 61.003 of the Education Code. *See* TEX. EDUC. CODE ANN. § 51.001 (Vernon 1996); *see also id.* § 61.003(3), (4), (8) (Vernon 1996 & Supp. 2002) (TWU is an institution of higher education.). The governing body of an institution of higher education is authorized by section 51.002 of the Education Code to retain control of certain sums of money collected at the institution, such as student fees, charges for use of dormitories, receipts from meals, and receipts from school athletic activities. *See id.* § 51.002(a) (Vernon 1996); *see also id.* § 54.525 (Vernon 1996 & Supp. 2002) (authorizing TWU board of regents to levy fixed student fee to fund student centers and to deposit in depository bank designated by board). It may select one or more depositories for those funds pursuant to section 51.003 of the Education Code and "shall require adequate surety bonds or securities to be posted to secure the deposits." *Id.* § 51.003(a)-(b) (Vernon 1996). The depository bank must pay interest on the deposits "at a rate agreed on by the depository and the governing board." *Id.* § 51.003(d). The governing body may deposit funds under its control as provided in section 51.003 or invest them in accordance with Government Code chapter 2256. *See id.* § 51.0031 (Vernon 1996 & Supp. 2002); *see also id.* § 51.004(d) (Vernon 1996) (crediting interest received from depository banks). Section 51.008(b) of the Education Code provides that every state institution of higher education shall deposit in the state treasury all cash receipts accruing to any college or university under its control, except for receipts from auxiliary enterprises, noninstructional services, Constitutional College Building Amendment funds, and certain other specified sources. *See id.* § 51.008(b) (Vernon 1996 & Supp. 2002). Section 51.008(a) directs the governing board of every state institution of higher education "to designate special depository banks, subject to the approval of the comptroller, for the purpose of receiving and keeping certain receipts [the receipts described in section 51.008(b)] of the institution separate and apart from funds now deposited in the state treasury." *Id.* § 51.008(a).

Thus, one group of provisions governs the deposit of receipts of institutions of higher education and another group of provisions governs the deposit of state agency receipts. Looking at Government Code section 404.0211 in context, it applies to the state agency receipts subject to Government Code chapter 404. Section 404.0211 does not refer to the deposit of funds received and managed by institutions of higher education. *See* TEX. GOV'T CODE ANN. § 404.0211 (Vernon 1998). Accordingly, we conclude that "state agency" within Government Code section 404.0211 does not include an institution of higher education such as TWU.

Legislative history supports our conclusion that depositories for university receipts and depositories for state agency receipts are governed by separate provisions and that article 404.0211 applies only to the choice of depositories for state agency receipts. Legislation authorizing institutions of higher education to retain control of certain funds and place them in local depository banks was adopted in 1933 at a time when provisions governing state depositories were already in place. *See* Act of June 1, 1933, 43d Leg., R.S., ch. 221, 1933 Tex. Gen. Laws 746 (depositories for

institutions of higher education); *see also* Act of Feb. 24, 1923, 38th Leg., R.S., ch. 34, 1923 Tex. Gen. Laws 60 (providing for state depositories). The emergency clause of the 1933 enactment concerning depositories for institutions of higher education stated as follows:

> The fact that under the present laws all the above institutions are withholding certain sums of money under a practice which has been established by them for a considerable period of time, and the fact that said institutions are scattered in various portions of the State and it would work a great hardship on said schools to place their moneys in the local funds in the State Treasury and the further fact that existing laws do not provide for security of deposits placed in local depositories, and the further fact that existing laws do not provide for any adequate system of accounting . . . creates an emergency . . . .

Act of June 1, 1933, 43d Leg., R.S., ch. 221, 1933 Tex. Gen. Laws 746, 749 (former article 2654d of the Revised Civil Statutes); *see* Act of May 31, 1951, 52d Leg., R.S., ch. 474, 1951 Tex. Gen. Laws 841 (former article 2543c of the Revised Civil Statutes and predecessor to Education Code section 51.008); *see also* Act of May 22, 1971, 62d Leg., R.S., ch. 1024, art. 1, § 1, art. II, § 48, 1971 Tex. Gen. Laws 3072, 3076-78, 3363 (repealing provisions governing receipts and depositories of institutions of higher education and recodifying as Education Code sections 51.001 through 51.008 in a nonsubstantive revision of higher education laws).

The predecessor of Government Code section 404.0211 was adopted in 1967.[2] The session of the legislature that adopted the predecessor of Government Code section 404.0211 in 1967 also amended the statutes authorizing "the governing boards of the . . . institutions" of higher education "to select depository banks" for certain receipts. *See* Act of May 25, 1967, 60th Leg., R.S., ch. 481, 1967 Tex. Gen. Laws 1092 (former articles 2543c, section 3 and 2654d, section 2 of the Revised Civil Statutes). The latter amendment did not mention the common-law rule. The legislature has dealt with the selection of depositories for state agencies separately from the selection of depositories for institutions of higher education, without modifying the common-law conflict-of-interest rule for the latter. Therefore, section 404.0211 of the Government Code has no effect on the conclusion of Attorney General Opinion JC-0426.

---

[2]*See* Act of April 26, 1967, 60th Leg., R.S., ch. 179, § 2, 1967 Tex. Gen. Laws 370, 371; *see also* Act of May 15, 1985, 69th Leg., R.S., ch. 240, §§ 1-2, 1985 Tex. Gen. Laws 1204, 1205-07, 1215 (repealing state depository law, except for article 2529c, Revised Civil Statutes, and one other provision, and adopting "Treasury Act," which includes provisions governing state depositories); Act of April 30, 1987, 70th Leg., R.S., ch. 147, §§ 1, 5, 1987 Tex. Gen. Laws 316, 346, 534 (adopting nonsubstantive revision of statutes relating to executive branch of government, including Government Code chapter 404); Act of May 4, 1993, 73d Leg., R.S., ch. 268, §§ 19, 46, 1993 Tex. Gen. Laws 583, 969, 986 (conforming amendment adding section 404.0211 to Government Code and repealing article 2529c, Revised Civil Statutes).

You also question whether Attorney General Opinion JC-0426 interpreted Education Code section 51.923 correctly. The opinion addressed this Education Code provision as follows:

> As introduced, the bill that became section 51.923 of the Education Code provided that an institution of higher education or a university system was not prohibited from contracting with a business entity because a member of the governing board was "a stockholder, officer, director, or employee" of the business entity. Tex. S.B. 1569, 71st Leg., R.S. (1989). The bill included this language at its first public hearing before the Senate Committee on Education, at which it was referred to a subcommittee. *Hearings on Tex. S.B. 1569 Before the Senate Committee on Education*, 71st Leg., R.S. (Apr. 19, 1989) (audio tape available from Senate Staff Services Office). The Senate Committee on Education ultimately approved a committee substitute from which the terms "officer" and "employee' were deleted. *Hearings on Tex. S.B. 1569 Before the Senate Committee on Education*, 71st Leg., R.S. (Apr. 19 & May 3, 1989) (audio tapes available from Senate Staff Services Office). Given the deletion of these terms, we will not assume that section 51.923 of the Education Code impliedly applies to an "officer" or "employee."

Tex. Att'y Gen. Op. No. JC-0426 (2001) at 3.

You assert that the legislative history of section 51.923 demonstrates that the legislature did not intend to exclude officers or employees from the class of interested persons who are covered by the bill. You write that the bill analysis that the legislature had before it "repeatedly reflects its understanding that the Senate Committee Substitute to S.B. 1569, not simply the original introduced version, authorized higher education institutions to enter into contracts where a governing board member is also 'a stockholder, *officer, employee*, or director of the entity.'" Pemberton Brief, *supra* note 1, at 5 (emphasis in orginal); *see also* SENATE COMM. ON EDUC., BILL ANALYSIS, Tex. S.B. 1569, 71st Leg., R.S. (1989).

Even assuming that we may rely on a bill analysis to supplement the plain language of the statute, the bill analysis for the companion to Senate Bill 1569 does not support your argument. *See* HOUSE COMM. ON HIGHER EDUC., BILL ANALYSIS, Tex. Comm. Sub. H.B. 1655, 71st Leg., R.S. (1989) (companion to Senate Bill 1569). The analysis of the Committee Substitute to House Bill 1655 prepared by the House Research Organization states that it "would allow institutions of higher education and university systems to enter into contracts with businesses in which a governing board member owned less than 10 percent of the capital stock." HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. Comm. Sub. H.B. 1655, 71st Leg., R.S. (1989); *see also* FISCAL NOTE, Tex. Comm. Sub. H.B. 1655, 71st Leg., R.S. (1989) (bill would clarify the qualifications of board members of universities as to voting on contractual issues relative to ownership in business not being greater than 10 percent).

More importantly, we cannot ignore the plain meaning of the statute, nor may we add to it in the guise of construction. *Gaddy v. First Nat'l Bank*, 283 S.W. 472, 474 (Tex. 1926); *State v. Millsap*, 605 S.W.2d 366, 369 (Tex. Civ. App.–Beaumont 1980, no writ). If a statute is clear and unambiguous, it is not necessary to resort to rules of construction or other extrinsic aid to construe it. *See Tune v. Tex. Dep't of Pub. Safety*, 23 S.W.3d 358, 363 (Tex. 2000). Every word of a statute must be presumed to have been used for a purpose, and every word excluded from a statute must also be presumed to have been excluded for a purpose. *Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995) (quoting *Cameron v. Terrel & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)). Section 51.923 provides that a corporation is not disqualified from entering into a contract or other transaction with an institution of higher education even though one or more members of the governing board "also serves as a stockholder or director of the corporation." TEX. EDUC. CODE ANN. § 51.923(c) (Vernon 1996). It does not mention service as an officer or employee of a corporation. This provision may be contrasted with the conflict-of-interest provision applicable to a school district's selection of a depository bank:

> If a member of the board of trustees of a school district is a stockholder, officer, *director, or employee of a bank*, the bank is not disqualified from bidding and becoming the school depository of the school district if the bank is selected by a majority vote of the board of trustees of the district or a majority vote of a quorum when only a quorum is present.

*Id.* § 45.204(a) (Vernon 1996) (emphasis added); *see id.* § 45.204(b) (member of the board of trustees who is a stockholder, officer, director, or employee may not vote on contract). We affirm our conclusion in Attorney General Opinion JC-0426 that section 51.923 of the Texas Education Code does not authorize the board of regents of the University to contract with a bank where a regent serves as an officer and employee.

You also suggest that our conclusion in Attorney General Opinion JC-0426 is not consistent with the rule that restrictions on the right to hold public office should be strictly construed in favor of eligibility. *See Brown v. Meyer*, 787 S.W.2d 42, 45 (Tex. 1990). The common-law conflict-of-interest rule does not restrict the regent's right to serve in that capacity. Instead, it disqualifies the bank from contracting with the University.

Finally, you argue that our opinion did not correctly reflect Texas judicial decisions and legislative policy. You point out that no Texas judicial decision supports the proposition that the common-law conflict-of-interest principles can invalidate a contract based on an employment relationship and refer to the federal court decision in *Crystal City v. Del Monte Corp.*, 463 F.2d 976 (5th Cir. 1972), *cert. denied*, 409 U.S. 1023 (1972). Pemberton Brief, *supra* note 1, at 5-6. In *Crystal City*, the Fifth Circuit Court of Appeals reviewed a summary judgment holding that a contract between the city and Del Monte Corporation was invalid because a member of the city council that approved it was employed by Del Monte. *See Crystal City*, 463 F.2d at 978. The appellate court held that the fact of the city councilman's employment did not support a conclusion

under the cited Texas statutory law or the Texas case law that the contract was void or voidable, and that no authority was cited for this proposition. *See id.* at 980. Whether the city councilman had "any interest — direct, indirect, personal or pecuniary — in the contract is a material fact disputed by the parties." *Id.* Thus, a hearing on the merits was necessary to clarify this issue, and requirements for summary judgment were not met. *See id.*

A federal court decision interpreting Texas law is not binding on Texas courts. *See Longview Bank & Trust v. First Nat'l Bank*, 750 S.W.2d 297, 300 (Tex. App.–Fort Worth 1988, no writ); *Woodard v. Tex. Dep't of Human Res.*, 573 S.W.2d 596, 598 (Tex. App.–Amarillo 1978, writ ref'd n.r.e.) (citing *Tex. Oil & Gas Co. v. Vela*, 405 S.W.2d 68, 73-74 (Tex. Civ. App.–San Antonio 1966), *judgm't set aside on other grounds*, 429 S.W.2d 866 (Tex. 1968)); Tex. Att'y Gen. Op. No. DM-426 (1996) at 3; *see also Duson v. Poage*, 318 S.W.2d 89, 94-95 (Tex. Civ. App.–Houston 1958, writ ref'd n.r.e.) (decision of United States Supreme Court on construction of state constitution would be highly persuasive). Neither the Texas courts nor the Attorney General is required to follow the *Crystal City* court's decision on Texas conflict-of-interest law.

In addressing requests for advice about the common-law conflict-of-interest doctrine, the Attorney General relies on Texas judicial decisions and prior attorney general opinions on that subject. *See Meyers v. Walker*, 276 S.W. 305 (Tex. Civ. App.–Eastland 1925, no writ); *see also City of Edinburg v. Ellis*, 59 S.W.2d 99 (Tex. Comm'n App. 1933, holding approved); *Bexar County v. Wentworth*, 378 S.W.2d 126 (Tex. Civ. App.–San Antonio 1964, writ ref'd n.r.e.); *Starr County v. Guerra*, 297 S.W.2d 379 (Tex. Civ. App.–San Antonio 1951, no writ); *Knippa v. Stewart Iron Works*, 66 S.W. 322 (Tex. Civ. App.–San Antonio 1902, no writ). While the Texas Supreme Court may change its earlier pronouncements on common law, *see Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex. 1998) (altering its common-law prejudgment interest calculation rules to conform to statutory standards), the Office of the Attorney General cannot overrule a judicial decision. *See* Tex. Att'y Gen. Op. Nos. JM-623 (1987), H-373 (1974); *see also* Tex. Att'y Gen. Op. No. JM-1116 (1989) (predicting on the basis of judicial decisions from Texas courts and the courts of other states that the Texas Supreme Court would overrule one of its opinions).

In resolving questions about common-law conflict-of-interest, this office has sometimes found judicial decisions of other states to be persuasive. *See Williams v. Cimarron Ins. Co.*, 406 S.W.2d 173, 175 (Tex. 1966); *Wirtz v. Sovereign Camp, W.O.W.*, 268 S.W. 438 (Tex. 1925) (decisions of courts of other states not binding on Texas courts, but may be persuasive). Attorney General Opinion H-916 relied on out-of-state cases to determine that a school district could not contract with a company that employed a member of the district's board of trustees in a managerial capacity, even though the trustee derived no direct financial benefit from the contract. Tex. Att'y Gen. Op. No. H-916 (1976) (relying on *People ex rel. Pearsall v. Sperry*, 145 N.E. 344 (Ill. 1924); *Edward E. Gillen Co. v. City of Milwaukee*, 183 N.W. 679 (Wis. 1921); *Stockton Plumbing & Supply Co. v. Wheeler*, 229 P. 1020 (Cal. Dist. App. 1924)). Since the issuance of Attorney General Opinion H-916, this office has consistently said that an employee of a company has at least an indirect pecuniary interest in the company and accordingly, a governmental body may not contract

with a company that employs one of its members. *See, e.g.,* Tex. Att'y Gen. Op. Nos. DM-18 (1992), JM-884 (1988), JM-171 (1984); Tex. Att'y Gen. LO-93-012. We continue to rely on this long-standing conclusion of this office.

We also believe that the conclusion in Attorney General Opinion JC-0426 that a bank employee has a pecuniary interest in the bank is consistent with legislative policy. We have already noted that section 45.204 of the Education Code provides that a bank is not disqualified from becoming the school depository if a member of the board of trustees is a stockholder, officer, director or employee of the bank. In this statute, adopted in 1967, the legislature determined it necessary to expressly except a school trustee employed by a bank from the common-law conflict-of-interest rule. *See* Act of May 25, 1967, 60th Leg., R.S., ch. 456, § 4, 1967 Tex. Gen. Laws 1040, 1041. In Local Government Code chapter 171, which allows certain local political subdivisions to contract with a business entity in which a member of the contracting body has a substantial interest, subject to procedures set out in the statute, the legislature has defined "substantial interest in a business entity" in a way that would in many cases include earnings from employment. *See* TEX. LOC. GOV'T CODE ANN. ch. 171 (Vernon 1999 & Supp. 2002). If funds received from a business entity exceed 10 percent of a person's gross income for the previous year, that person has a "substantial interest" in the business entity. *See id.* § 171.002(a)(2); *see also* Tex. Att'y Gen. Op. Nos. JC-0407 (2001) at 13-14, JC-063 (1999) at 9, JM-424 (1986) at 4. This definition demonstrates to us that the legislature considers an individual's interest in his or her employment with a business entity sufficient to raise a conflict of interest under chapter 171 of the Local Government Code. We believe that Attorney General Opinion JC-0426 reached a correct result, and we affirm its conclusions.

### S U M M A R Y

Section 404.0211 of the Government Code, which changes the common-law conflict-of-interest rule for state agency officers who select a depository for the funds of a state agency, does not apply to an institution of higher education such as Texas Woman's University. Attorney General Opinion JC-0426 is affirmed.

Yours very truly,

JOHN CORNYN
Attorney General of Texas


HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee